Toney et al v. McGehee et al.

| 38 | 419 |
|----|-----|
| 55 | 152 |
| 38 | 419 |
| 56 | 81 |
| 38 | 419 |
| 59 | 620 |

## TONEY ET AL v. McGEHEE ET AL.

1. FRAUDULENT CONVEYANCES: *When impeachable by subsequent creditors.*
   A voluntary conveyance may be impeached by a subsequent creditor on the ground that it was made in fraud of existing creditors; but to do so, he must show either that actual fraud was intended, or that there were debts still unpaid which the grantor owed at the time of making it.

2. FRAUD: *Not presumed.*
   Fraud will not be inferred from an act which does not necessarily import it. It is never presumed, and circumstances of mere suspicion, leading to no certain results are not sufficient proof of it.

APPEAL from *Ouachita* Circuit Court in Chancery.
Hon. J. K. YOUNG, Circuit Judge.

### STATEMENT.

In 1877, McGehee, Snowden & Violette, merchants and partners, filed in the Ouachita Circuit Court their complaint in equity against James R. Toney, R. M. Green and J. M. Pace, alleging that they had recovered judgments against said Toney in said court in 1875, for about ten thousand dollars ($10,000), upon which executions had been issued, and returned *nulla bona.*

That in 1866, Toney and William T. Stone jointly owned valuable town lots in Camden (describing them), and on the twenty-second day of October, 1866, conveyed them to one John Brown. That this conveyance was, as to Toney, without consideration, and was made by him to cheat and defraud his creditors.

Afterwards, on the tenth day of July, 1867, Brown conveyed to H. K. George, a cousin of Toney, and his partner in business, for the pretended consideration of seven thousand dollars ($7,000), none of which was ever paid. That this conveyance was procured by Toney to enable him to regain possession of the property, and at the same time place it beyond the reach of his creditors. That afterwards, on the twenty-fourth of February, 1871, George conveyed the property to defendant, Toney; and afterwards, on the fifteenth of February, 1873, Toney conveyed to the defendant, Green, who was his son-in-law, for the pretended consideration of six thousand and three hundred dollars ($6,300), no part of which was paid. That these several conveyances was a scheme on the part of defendants, Toney and Green, and knowingly participated in by said Brown and George, to enable Toney to cheat and defraud his existing creditors, and on the part of Toney and Green to contract further debts, and cheat and defraud future creditors. That at the time of contracting the debts on which the plaintiffs' judgments were rendered, and long before then, Toney was in possession of the property, which contained a brick store-house, as the ostensible owner, paying taxes on it, and claiming and holding it out to the world as his own; and they never pretended that it belonged to Green until the plaintiff's said suits were instituted.

About the first of January, 1874, said store-house was leased by Green to defendant, Pace, and he was still occu-

pying it under the lease, at an annual rent of one hundred and fifty dollars ($150).

Prayer that the deed to Green be cancelled as fraudulent and void, and the property be sold to satisfy their judgments, and in the meantime a receiver be appointed to collect the rents then due and subsequently to accrue, etc.

Toney and Green answered separately; Toney admitting the execution of the deeds, but denying the alleged fraudulent intent or purposes. He denies that the consideration of the deeds was colorable, but was, in fact, paid. He explains how he paid George for his deed, and says that for the consideration for his deed to his son-in-law, Green, Green gave his note for six thousand three hundred dollars ($6,300). Afterwards one thousand and eight hundred dollars ($1,800) of this note was paid by cancelling his indebtedness to his daughter, Green's wife, for that sum, and the note was then delivered up to Green, making him a present of the balance of it, in consideration of their relationship. He says that if he was indebted at all at this time, it was in a very small amount, and he was in a prosperous mercantile business, and able to pay all his debts on demand, and did pay them all before surrendering the note to Green. That this was before he knew the plaintiffs, or had contracted any debt with them; and the conveyance was not made to defraud existing or subsequent creditors.

Green also denied, in his answer, all fraud in the transaction and all knowledge of Toney's indebtedness, and asserts that since the conveyance to him he had used and controlled the property as his own, paying the taxes and renting out and receiving the rents for himself.

Pace made no answer.

### THE EVIDENCE.

H. K. George deposed that in 1867, the defendant, Toney,

John George and himself formed a mercantile partnership,
and carried on business in the firm name of H. K. George
& Co., in one of the store-houses mentioned in the com-
plaint. Soon after putting the goods in the horse Toney
told him the house belonged to him, but the title was in
John Brown, who was getting old, and he wanted the title
made to witness, and requested witness to go to Brown's
office and Brown would deliver him a deed for the store-
house, and if any one asked him anything about it to tell
them he paid seven thousand dollars ($7,000) for it. That
he went as requested and Brown delivered to him the deed,
and Toney paid for recording it. Witness held the property
until 1871 or 1872. That about 1867, Toney went into
bankruptcy, and after his discharge the firm name was
changed to George & Toney, and while this firm was in
operation Toney went to Philadelphia and purchased a stock
of goods to set his son-in-law up in business in Arkadelphia,
in the name of C. C. Scott & Co., and informed
the parties from whom he purchased the goods that the
firm of George & Toney were going in as partners.
Witness repudiated the transaction as soon as he heard of it,
and refused to have anything to do with it. In a short
time C. C. Scott & Co., were burned out and failed. That
when their creditors threatened to sue Toney, he said he
would deed the store to R. M. Green, and requested
witness to convey the property to him. Toney and he did
so without any consideration whatever. Toney said he was
going to convey to Green so that the Philadelphia creditors
would get nothing. Green was without visible means, and
largely indebted at the time.

James D. Pickens deposed, that in 1872 or 1873, Toney
became involved in a law suit by some parties in Philadel-
phia against his son-in-law, Kitt Scott, himself and others,
and told witness of the suit, and his apprehensions of the

Toney et al v. McGchee et al.

result, and said he would sell his brick store-house in Cam-
den to R. M. Green, to secure it from the parties in the
event of their success. Witness was present and drew up
the note executed by Green for the property. Toney went
to Philadelphia to attend the taking of depositions there in
the case, and on the day he started witness saw him and
Green in close conversation ; and Green called witness back
into the office of J. R. Toney & Co., and handed him a
$1000 dollars to pay Toney on the note. He was surprised
to see Green have so much money, as he was hard pressed,
and not accustomed to handling much money—was always
behind with Toney and others, and Toney had told
him that Green was a heavy burden on him. Witness was
thoroughly conversant with Toney's business at the time, and
thought he borrowed the money for a short time to enable
Green to make the payment.

There was no other testimony except the deeds exhibited
with the complaint.

The court found the deed to Green fraudulent both as to
prior and subsequent creditors, and ordered the property
sold to satisfy the plaintiff's judgments, and also appointed
a receiver to collect the rents, and apply to the judgments.
Toney and Green appealed.


*H. G. Bunn and B. B. Battle* for appellants :

Appellant had a right to dispose of his property in any
way he saw fit, provided in so doing, he defrauded no one.

To entitle plaintiffs to set aside the deed, because of fraud,
"It is necessary to show that they have a valid, unsatisfied
judgment upon a cause of action *which accrued before the
conveyance of his property;* that they have issued process
upon their judgment, and have been unable to find proper-
ty of defendants, free from incumberance, out of which to

make the debt ; that the defendant was possessed of property out of which the debt might in part or in whole be satisfied ; that he has conveyed the property with the intent of defrauding his creditors.'' Judge WALKER in ·Clark v. Anthony, 31 Ark., 548.

"A sale to be fraudulent *as to creditors* must be made with the intent to hinder, delay or defraud them, in which purpose the purchaser must participate by purchasing with the view and aim to aid and forward it.'' 9 Ark., 482 ; 23 Ib., 258 ; 31 Ib., 417–556 ; 32 Ib., 255.

A voluntary conveyance to wife or child, is *prima facie* only, and not conclusively fraudulent as to *existing creditors*. Bertrand v. Elder, 23 Ark., 505. There must be creditors at the time of the conveyance. Sexton v. Wheaton, 8 Wheat., ( U. S.) 229 ; Haskell v. Bakewell, 10 B. Mon., 230 ; Bennett v. Bedford Bank, 11 Mass., 421 ; Parker v. Proctor, 9 Mass., 390 ; Waterson v. Wilson, 1 Grant's (Pa.) Cases, 74 ; Cole v. Varner, 31 Ala., 244 ; Converse v. Hartley, 31 Conn., 372 ; Cosbey v. Ross, 3 J. J. Marsh, 290 ; Ender v. Williams, 1 Met. (Ky.,) 346 ; Ward v. Hollins, 14 Md., 158 ; Thatcher v. Finney, 7 Allen, (Mass.,) 146.

A subsequent creditor may avoid a voluntary deed on the ground that it was made to defraud existing creditors, but in order to do so he must show debts still outstanding which existed when the deed was made. Claffin v. Mess, 31 N. J. Eq., 211 ; Lush v. Wilkinson, 5 Vesey, 387 ; Kidney v. Conssmaker, 12 Vesey, 156.

A trifling indebtedness, where the grantor retains under his control property enough to meet all demands, will not avoid the conveyance. Jackson v. Peck, 4 Wend., 302 ; Mateer v. Hissim, 3 Pa., 160 ; Burkey v. Self, 4 Sneed, (Tenn.,) 121. See also 8 Ark., 470 ; 21 Ib., 375.

Fraud must be proven. 9 Ark., 452 ; 31 Ib., 556 ; 23 Ib., 123. The proof of prior debt must be specific, accom-

panied by proof of inabilty to pay debts. *Smith* v. *Green*, *3 Humph.*, 118; *Loeschigh* v. *Hatfield*, 5 *Robt.*, (*N. Y.*,) 26; *S. C.*, 4 *Abb.*, *Pr. N. S.*, 210; *S. C.*, 51 *N. Y.*, 660; *Wilbur* v. *Fradenburgh*, 52 *Barb*, 474; *Hutchinson* v. *Kelley*, 1 *Rob.* (*Va.*,) 123; *Pope* v. *Wilson*, 7 *Ala.*, 690.

The fact that a grantor was in failing circumstances, or indebted at the time of the execution of a deed, or the grantor was his son, does not prove the deed fraudulent. 22 *Ark.*, 146; 24 *Ib.*, 123.

The deed was recorded, and notice to the world.

"A fraudulent conveyance of land made for the purpose of preventing its being subjected to the payment of *an existing debt*, but with no view to defraud subsequent creditors, will not be set aside in equity upon application of a creditor after the deed was made and *recorded.. Lynch* v. *Raleigh*, 3 *Ire'd*, 273; *Horn* v. *Volcanic, etc., Co.*, 13 *Cal.*, 62; *Kibb* v. *Hanna*, 2 *Bland*, (*Md.*,) 26; *Wright* v. *Henderson*, 8 *Miss.*, (7 *How.*,) 539.

*U. M. & G. B. Rose*, for appellees:

The court is not confined to a consideration of the execution of the deed to Green, but may regard the other conveyances made by Toney, which tend to show fraud, etc. *Bigelow on Estoppel*, 478; *Lincoln* v. *Claflin*, 7 *Wall.*, 132: *Butler* v. *Watkins*, 13 *Ib.*, 464.

Appellees had recovered judgment, issued executions, which had returned *nulla bona*, and then properly brought this suit to subject this property.

Green held the property, as trustee, for Toney's benefit, and the creditors of the latter, prior or subsequent, can subject it.

Appellees are entitled to be subrogated to the rights of

53—38

prior creditors whose claim they paid off.  *Savage* v. *Murphy*, 3 *N. Y.*, 508; *Wilson* v. *Buchanan*, 7 *Gratt*, 334; *Castor* v. *Cunningham*, 3 *Strobb*, 59; *Paulk* v. *Cook*, 39 *Conn.*, 566.

When a conveyance is actually fraudulent, it may be impeached by creditors, prior or subsequent.  The fact that a conveyance is made with the intent to defraud antecedent creditors is *prima facie* evidence of an intent to defraud subsequent creditors, and when, at the time of the execution of the deed, the donor is insolvent, the conveyance is void as to subsequent creditors.  *Lowry* v. *Fisher*, 2 *Bush.*, 70; *Wadsworth* v. *Haven*, 3 *Wend.*, 411; *Carpenter* v *Roe*, 10 *N. Y.* 227; *Hurdt* v. *Courtiway*, 4 *Metc.*, (*Ky.*,) 139; *Iley* v. *Niswanger*, 1 *McCord*, 518.

OPINION.

HARRISON, J.   The conveyance to Green was, as is clearly shown by the depositions of George and Pickens, voluntary, and made by Toney to defeat the claim of the creditors of C. C. Scott & Co., who were suing him as a silent partner of the firm; but whether they ever recovered judgment against him does not appear, and there was no evidence that he had, in fact, ever been indebted to them.

It does not follow that because his object in making the conveyance was to place the property conveyed beyond their reach, should they recover judgment against him, if he was not indebted to them, that the conveyance was fraudulent. Certainly they had no ground to complain, for they were not thereby injured, and no fraud was committed upon them.

Except the statement in Toney's answer, which should be taken and considered as a whole, that he was only indebted

Toney et al v. McGehee et al.

to an inconsiderable amount which he had ample means to pay, and did in fact pay before he had any dealings with the plaintiffs, there was no proof that he owed any debts at the time the conveyance was made.

A voluntary conveyance may be impeached by a subsequent creditor, on the ground that it was made in fraud of existing creditors; but to do so, he must show either that actual fraud was intended, or that there were debts still outstanding, which the grantor owed at the time he made it. 1 *Stor. Eq. Jur.*, sec. 361; *Clafflin* v. *Mess*, 30 *N. J. Eq.*, 211; *Pope* v. *Wilson*, 7 *Ala.*, 690; *Smith* v. *Greer*, 3 *Humph.*, 118; *Reade* v. *Livingstone*, 3 *Johns. Ch.*, 480.

1. FRAUD-U L E N T CONVEY-ENCES: When impeachable by subsequent creditors.

Fraud will not be inferred from an act which does not necessarily import it. It is never presumed, but must be proven; and circumstances of mere suspicion, leading to no certain results, are not sufficient proof of it.

2. FRAUD: Not presumed.

There was no proof of any outstanding debt when the plaintiffs' suit was commenced, nor when Toney became indebted to them: none that when he conveyed to Green he owned no other property, or was not possessed of ample means besides, or, was insolvent; and except the statement in his answer, before referred to, none that he was to any extent or at all in debt.

The fraud charged in the complaint was not therefore sufficiently proven. The decree is reversed.