MERRILL v. ROKES.

(Circuit Court of Appeals, Eighth Circuit.   February 20, 1893.)

No. 129.

1. EXECUTION—DISTRIBUTION OF PROCEEDS—REDELIVERY BOND.
    M. and R. were the joint assignees of a judgment. The judgment had been collected by execution, and the money paid to the clerk of the court, to remain until certain liens, claimed by other parties on the money, were finally decided. Pending the litigation concerning the liens M. gave a restitution bond, conditioned to return the money in case he was so ordered by the court, and the clerk paid the money to him, to be held in trust for the bondsmen until a decision was rendered. Held, that R. was not entitled, during the time the restitution bond remained in force, to recover from M. his share of the money.

2. PLEADING AND PROOF—VARIANCE.
    In an action to recover damages for defendant's conduct in advising and influencing the clerk of the court not to pay money claimed to be due plaintiff, and for damages for negligence in failing to collect a judgment,

it is not competent, without further pleading and notice, to recover as for money had and received, by showing that defendant, since the action was begun, collected the judgment.

8. PRINCIPAL AND AGENT—RIGHTS INTER SE.

M. was agent of R. to collect certain notes. He traded the notes to the makers for a stock of goods, being all their property. Subsequently other creditors of the makers attached and sold the goods, the proceeds being paid into court. At the sale M. purchased and paid for part of the goods, and operated a store therewith, making other small purchases to replenish the stock. Shortly afterwards the stock was burned without insurance. In the mean time M., as agent of R., had drawn from the clerk part of the proceeds of the sale, and now, as against his principal, claims a lien thereon for the amount he paid for the goods, and the expenses of the store. *Held,* that if he purchased the goods for himself he was not entitled to any lien; but if he purchased for his principal, to prevent a sacrifice of the property, and to collect R.'s claim, and operated the store for that purpose, and R. acquiesced therein, then M. was entitled to retain the purchase price and expenses.

In Error to the Circuit Court of the United States for the District of Kansas.

Action by Leander Rokes against N. C. Merrill to recover damages for negligence in failing to collect money due plaintiff. Judgment for plaintiff. Defendant brings error. Reversed.

Statement by SANBORN, Circuit Judge:

This is a writ of error to reverse a judgment in favor of the plaintiff, who is here the defendant in error, and against the defendant, who is here the plaintiff in error, rendered in an action brought to recover damages for the alleged negligence of the defendant as an agent in collecting moneys due to the plaintiff, his principal. The plaintiff set forth three causes of action in his petition. The first was for money had and received; the second was for damages for the negligence of the defendant, as his agent, in failing to collect two promissory notes, which amounted in the aggregate to $1,925, made by one Mooney, and payable to the order of the plaintiff; and the third was for damages for advising and influencing the clerk of the district court of Ness county, Kan., to refuse to pay to the plaintiff $887.21, which had been deposited with him to abide the result of a litigation over it, pending upon a writ of error in the supreme court of Kansas betwen certain creditors of one Peters and one Topping in an action in which a judgment had been rendered in the district court in favor of Topping and against Peters for $1,206, and assigned to the plaintiff and defendant jointly, and for damages for the negligence of the defendant in failing to collect that judgment. The defendant denied the negligence, and pleaded that he had incurred attorneys' fees and expenses in his endeavors to collect these claims for the plaintiff, for which he sought allowance.

As to the third cause of action the facts were these: From 1885 until February 22, 1888, the defendant was a private banker at Ness City, Kan., under the name of the Ness County Bank. On that day the bank was incorporated, and the corporation, under the same name, succeeded to the defendant's bank business and assets. The defendant became, and has since been, its president, and one of its stockholders. In 1889 one Topping was owing the defendant or his bank, and also the plaintiff, and to secure them both he assigned to the plaintiff and defendant jointly a judgment of $1,206 he had recovered against one Peters. A stock of goods which had been seized under process of the court in that action had been sold, and its proceeds, about $800, paid to the clerk of the court to abide the result of a litigation between Topping and certain attaching creditors of Peters, (who claimed the right to this money,) which had been decided in favor of Topping in the district court, but was pending in the supreme court of Kansas on writ of error. There was no evidence that the clerk of the court was advised or influenced by the defendant to withhold this money from the plaintiff, or that the defendant was negligent in collecting it. This action between the

plaintiff, Rokes, and the defendant, Merrill, was commenced on August 13, 1890. Over the objection of the defendant the plaintiff testified that in March, 1891, the defendant collected from the clerk of the court $800 on the Topping judgment. On the part of the defendant it appeared that the district court had ordered the clerk to pay this $800 over to Topping upon his filing a bond conditioned to return the money in case the supreme court should reverse the judgment rendered below; that the Ness county bank procured such a bond to be given, signed by Topping as principal and the defendant and others as sureties, and on this order and bond the money was drawn from the clerk and paid over to the bank, to be held in trust for Topping, the bank, and the plaintiff until the final decision of the supreme court.

Upon this state of facts the defendant requested the court to instruct the jury with reference to this third cause of action—First, that they must return a verdict for the defendant; second, that if they found that the money on the Topping judgment was not drawn out until after this action was commenced, the plaintiff could not recover on this cause of action; and, third, that if they found that the money was drawn out by the defendant upon giving a restitution bond, and proceedings were still pending in the supreme court of Kansas to reverse the judgment in Topping's favor, the money might be retained by those who gave the bond, until the case was finally determined in the supreme court. The court declined to give either of these requests, charged the jury that no claim was made by the plaintiff on the first cause of action for money had and received; that they would not consider that cause of action, but that, if they believed under the evidence that the defendant had collected this $800, he was liable to the plaintiff for his just proportion of it. The jury found for the plaintiff on this issue, and the defendant assigned the rulings stated as error.

Robert Dunlap, (George S. Redd and A. A. Hurd, on the brief,) for plaintiff in error.

Charles Blood Smith, (W. H. Rossington and E. J. Dallas, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

1. One may not, in the trial of an action, without pleading or notice, prove and recover judgment upon a cause of action which did not accrue until after the action on trial was commenced. Rev. St. U. S. § 914; Gen. St. Kan. par. 4227; Porter v. Wells, 6 Kan. 453; 1 Greenl. Ev. § 51. Paragraph 4227 of the Kansas statutes provides that "either party may be allowed on notice and such terms as the court may prescribe to file a supplemental petition, answer, or reply alleging facts material to the case occurring after the former petition, answer, or reply," and the highest judicial tribunal of that state has held that it is reversible error to receive evidence on behalf of a plaintiff of material facts occurring after the filing of his petition, without such supplemental pleading, (Porter v. Wells, supra,) yet the cause of action on which the plaintiff recovered here without pleading notice or terms did not accrue until six months after the filing of his petition.

2. One may not bring and try his suit upon one cause of action and recover a judgment or decree upon another. A judgment, in order to be sustained, must be according to the allegations and the proofs. Burton v. Platter, 53 Fed. Rep. 901, (decided by this court at this

term;) Taussig v. Glenn, 51 Fed. Rep. 409, 413, 2 C. C. A. 314, 4 U. S. App. 524; 1 Black, Judgm. § 242. The reason of this rule, that the defendant may have ample opportunity, after notice of the nature of the claim against him, to plead his defenses and set-offs and procure his evidence in support of them, is obvious. The importance of adhering to it is well illustrated in the cases just cited and in the case we are considering. Here, upon a petition setting forth a cause of action for damages for wrongfully advising and influencing a third person and negligently failing to collect a judgment without proof to support it, a judgment is obtained without pleading or notice, upon a cause of action for money had and received that did not accrue until six months after this action was commenced.

3. The action for money had and received is founded on what the law terms an implied promise to pay what in good conscience the defendant is bound to pay; but the law never implies the promise to pay unless duty creates the obligation to pay. If the $800 was withdrawn from the clerk of the court upon the restitution bond, and was held in trust by the defendant or his bank for the bondsmen, to be returned to the court in satisfaction of the bond in case the supreme court reversed the decision below, there was no duty imposed on the defendant or the bank to pay over any portion of this money to the plaintiff until that court rendered its decision. On the other hand, it was their duty not to pay it to him, but to hold it in readiness to discharge the trust imposed upon it. Cary v. Curtis, 3 How. 236, 240, 251. The bond of restitution and order of the court placed those who received the money under them in the shoes of the clerk himself. They were bound to return the money to the court, to be paid to the opposing creditors if the decision below was reversed, and bound to pay it to the owners of the Topping judgment if it was affirmed; but until it was reversed or affirmed neither party had any better cause of action against them than he would have had against the clerk if the bond had not been given. Any other rule might work great injustice, for, if the defendant holds this money in trust to respond to the final decision in the litigation in which it is involved, he would be bound to return it to the clerk of the court if the decision below is finally reversed, and in that event he would be compelled to pay that portion of it which the plaintiff would now recover on a judgment in his favor twice.

In the reception of plaintiff's evidence, in refusing to give any of the instructions to the jury requested by the defendant, and in the charge it gave relative to this third cause of action, the court below fell into the error of disregarding the rules to which we have called attention, and for this error the judgment in this case must be reversed.

The conclusion we have reached renders it unnecessary to consider the errors assigned relating to the second cause of action, but, in view of the probability of another trial, we deem it advisable to call attention to the question there in dispute as the record discloses it. Certain notes of Taylor and O'Brien which were pledged as collateral security for the Mooney notes were traded to that firm by the defendant, in an effort to collect them, for a stock of goods, which seems to have been all the property they had. The stock was put in

Mooney's possession, in trust, to secure his notes to the plaintiff. Other creditors of Taylor and O'Brien seized it under attachments. Mooney, under the defendant's direction, interpleaded in the attachment suits, claiming the goods, obtained a judgment declaring that he had a first lien on this stock of goods for $4,000, which he assigned to the defendant to secure his notes to the plaintiff. On January 28, 1888, the stock was sold under the order of the court, and the proceeds—about $2,600—was paid over to the clerk of the court. The judgment subsequently became final, and the defendant drew from the clerk on this judgment $1,820.56. The only real controversy between the parties is whether the plaintiff is entitled to any part, and, if so, to what part, of this sum.

The cause of action pleaded was, indeed, for the negligence of defendant in failing to collect the two Mooney notes, but the verdict rests upon a cause of action for this $1,820.56 money had and received by the defendant for the plaintiff. There was no evidence of any negligence of the defendant that caused the plaintiff any damages prior to the sale on January 28, 1888. That he delivered up the Taylor and O'Brien notes for their stock of goods, and took no chattel mortgage or other security from Mooney when he placed him in possession of it, caused the plaintiff no damage, because the notes of Taylor and O'Brien were only valuable to enforce against the stock, which was all the property they had. A chattel mortgage from Mooney would have been valuable only as a lien on the same stock, and the plaintiff received the full benefit of this entire stock through the possession of Mooney, and the $4,000 judgment in his favor, which was assigned to the defendant for his benefit.

The plaintiff now insists that he is entitled to recover of the defendant all of this $1,820.56. This is a portion of the proceeds of the Mooney judgment, and the defendant claims that to procure it he was compelled to incur and pay attorneys' fees and other expenses, and that he ought to be permitted to retain out of the proceeds the amounts he so expended. If in procuring the possession of the stock and obtaining the Mooney judgment he necessarily incurred any reasonable expenses and attorneys' fees, and the plaintiff asks to recover of him this money which these attorneys' fees and expenses earned, the defendant is obviously entitled to set off and retain them for his reimbursement. The principal cannot take the benefits and repudiate the burdens of his agent's acts. If he ratifies that which favors him, he ratifies the whole. Gaines v. Miller, 111 U. S. 395, 398, 4 Sup. Ct. Rep. 426; Story, Ag. §§ 335, 336; Skinner v. Dayton, 19 Johns. 513, 554. On July 28, 1890, the plaintiff served on the defendant a written notice, in which he claims that the Mooney judgment and its proceeds are his, and demands of the defendant "the said sum of $1,820.56, so received out of the said Mooney judgment, and for all interest accruing for the same, to wit, interest at the rate of 10 per cent. per annum from January 28, 1888, less all legal claims which you may have against me for attorneys' fees or other costs justly incurred in the litigation connected with my said claim against the said Mooney." This demand, which was urged at the trial, and was the basis of the plaintiff's recovery, was a ratification of the acts of the defendant on his prin-

cipal's behalf up to the sale on January 28, 1888, and left nothing in issue between the parties relative to their transactions prior to that date but the amount of the attorneys' fees and expenses the defendant had incurred in his principal's interest.

A more serious question relates to the transactions of the defendant at and after the sale. The plaintiff was absent from the state of Kansas from July, 1887, until February 12, 1888. At the sale the defendant bid in at about one third of their cost price, and paid for, goods which cost him $1,230. With these goods he operated a store in charge of Mr. Mooney as his agent from that date until July 17, 1888, when the goods were burned without insurance. Meanwhile he paid some small amounts for staple goods to replenish the stock, and received the proceeds of the sales in the store. He claims the right to set off and retain from this $1,820.56 this $1,230 and the moneys he paid for staple goods for the store after crediting the proceeds which he received from the sales, and this right the plaintiff denies. The defendant claims that he was compelled to and did purchase these goods to prevent such a sacrifice of the stock at the sale as would have resulted in its realizing an amount far less than the plaintiff's claim; that he made the purchase and ran the store solely for the plaintiff's benefit; that in February, 1888, he informed the plaintiff that he had made the purchase and was operating the store for him, and he acquiesced in and ratified his acts; while the plaintiff insists that in the purchase of the goods and in the storekeeping the defendant was acting for himself, and not for his principal. If the defendant purchased these goods and operated this store for himself, he is not entitled to retain the moneys he advanced to purchase them or to replenish his stock, and the plaintiff is entitled to recover the money he drew from the clerk on the Mooney judgment, less the attorneys' fees and expenses incurred by the defendant, of which we have spoken; but if the defendant purchased these goods and paid for them for the plaintiff, to prevent a sacrifice of the property at the sale, and to collect the plaintiff's claim, then operated the store to convert the goods into money for the same person and purpose, notified the plaintiff before the fire that he had made the purchase and was operating the store for him, and the plaintiff made no objection, but acquiesced in his action, then the defendant is entitled to retain from this money, in addition to the attorneys' fees and expenses, the $1,230 he paid for the goods and the moneys he expended in replenishing the stock, and the plaintiff is entitled to the proceeds of the sales made at the store which the defendant received. The judgment is reversed, and the case remanded, with instructions to grant a new trial.