## In re ROSSER.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1900.)

No. 13.

1. BANKRUPTCY—JURISDICTION—REQUIRING BANKRUPT TO SURRENDER PROPERTY.

Under the general rules of law, and under the specific provisions of the bankruptcy act, a court of bankruptcy has power and jurisdiction to make an order requiring the bankrupt to pay or deliver to his trustee in bankruptcy money or other property found to be in his possession or control, constituting a part of his estate in bankruptcy, and which he has not surrendered or accounted for, and to enforce his obedience to such order by commitment as for contempt.

2. SAME—TRUST FUNDS.

Two essential facts condition the lawful exercise of the power to require a bankrupt or other person to pay or deliver to the trustee money or property in his possession. They are that the money or property directed to be delivered to the trustee is a part of the bankrupt estate, and that the bankrupt or person ordered to deliver it has it in his possession or under his control at the time the order of delivery is made.

3. SAME—IMPRISONMENT FOR DEBT.

An order of the court of bankruptcy for the payment of money or delivery of property to a trustee in bankruptcy, which constitutes a part of the estate in bankruptcy, and which is in the control and possession of the party directed to pay or deliver it, at the time the order is made, is not an order for the payment of a debt; and a commitment of the party to jail until such order is complied with is not imprisonment for debt, within the meaning of a state law (Const. Mo. art. 2, § 16; Rev. St. Mo. § 8954), abolishing imprisonment for debt.

4. SAME.

Notice to the defendant of the charge, claim, or proposed judgment or order against him, and an opportunity to be heard respecting the justice of the order or the judgment proposed, are essential elements of due process of law in judicial proceedings.

5. SAME—DUE PROCESS OF LAW.

After the examination of a bankrupt and other witnesses concerning his estate, under subdivision 9, § 7, and section 21, of the bankrupt act, an order was made by the referee requiring the bankrupt to pay to his trustee a sum of money alleged to be in his possession and to constitute assets of his estate. The bankrupt had no notice that the examination, or the testimony taken thereat, would be used to obtain such an order, nor was he notified that such order was contemplated or had been applied for, nor given an opportunity to show cause against it. Thereafter, the order not being obeyed, the trustee moved the district court to punish the bankrupt for contempt. Notice of this motion and of the application for adjudication thereon was given to the bankrupt, and he answered, alleging his want of notice of the application to the referee, and want of opportunity to defend against it, and praying that the proceedings

be dismissed, or that he be given an opportunity to take the testimony of witnesses showing that he was unable to comply with the order. The court refused this prayer, but offered the bankrupt an opportunity to be cross-examined upon the matters embraced in his previous examination, and upon any matters tending to show what had become of the money in question or his inability to comply with the order of the referee. Upon his answering that he had disposed of the money before the institution of the proceedings in bankruptcy, and declining to be cross-examined, on the ground that his answers would tend to criminate him, the court adjudged him in contempt and committed him to jail. *Held*, that the order of the referee was unlawful and void, for want of notice to the bankrupt and an opportunity to defend against it, not being based upon due process of law; that the defect was not cured by the subsequent proceedings in the court of bankruptcy; and that the judgment of contempt and order of commitment must be vacated and annulled.

6. SAME—APPEAL AND REVIEW—LAW AND FACT.

On a petition to the circuit court of appeals for review of proceedings in bankruptcy had in the district court, under Bankr. Act 1898, § 24, subd. b, the jurisdiction of the appellate court is restricted to the consideration of matters of law, and does not embrace the review of questions of fact; and an objection of the petitioner for review, that the evidence in the case did not warrant the order complained of, will not be considered by the appellate court.

Petition for Review of an Order of the District Court of the United States for the Northern Division of the Eastern District of Missouri, in Bankruptcy. See 96 Fed. 305, 308.

This proceeding invokes a revision under subdivision "b" of section 24 of the bankrupt act (30 Stat. 544, 553, c. 541) of the rulings upon questions of law of the United States district court in the matter of George P. Rosser, bankrupt. On April 7, 1899, the creditors of Rosser petitioned to have him adjudged a bankrupt, and their prayer was granted on May 11, 1899. At the request of the trustee appointed in this proceeding the referee in bankruptcy required the bankrupt, Rosser, to submit to an examination under subdivision 9, § 7, and section 21, of the bankrupt act. At this examination his testimony and that of various other witnesses was taken, but no notice was given to him that this examination or the testimony of the witnesses at this hearing would be used to obtain, or that any application would be made for, an order upon him to deliver or pay over $2,500, or any other sum, to the trustee as a part of the property of the bankrupt estate. On July 20, 1899, in the absence of any preceding notice to Rosser that such an order was contemplated, the referee ordered him to pay over to the trustee $2,500, which the referee found in said order that Rosser had received about March 17, 1899, and had failed and refused to account for or to schedule as a part of his estate. This order was served on Rosser on July 25, 1899, and on August 4, 1899, he answered that he was unable to obey said order, because he had no money with which to comply with it. On August 14, 1899, the trustee filed a petition in the district court in which he set forth the proceedings that have been recited, alleged that the bankrupt had refused to obey the order of the referee, and prayed that he might be adjudged in contempt of court, and be punished for such contempt. Notice of this petition and of the application for an adjudication upon it was duly given to the bankrupt, and he answered that he was never notified of the intention of the trustee to ask the referee to make the order upon him to pay over the $2,500, that he was never given an opportunity to show cause why said order should not be made, that it was made without giving him an opportunity to be heard in the premises, that he had not the present ability to comply with the order, and he prayed that the proceedings against him be dismissed, and that he be given an opportunity to take the testimony of witnesses for the purpose of showing that he was unable to comply with the order of the referee. The court denied his application to dismiss the proceedings, and to have an opportunity to take the testimony of witnesses, but announced that it would give the bankrupt an opportunity to be cross-examined before the court upon any of the matters

and things upon which he had been examined before the referee, and upon any other matters tending to show what had become of the $2,500 he had been ordered to surrender, or tending to show his inability to comply with the order of the referee. Thereupon the case was set down for hearing on August 26, 1899. On that day the bankrupt appeared, and filed an answer to the citation for contempt, in which he averred that he was unable to comply with the order of the referee or to pay over the $2,500, because he had not the money or any part of it in his possession or under his control, and was unable to procure the same. He further averred in his answer that he borrowed the said sum of money on March 17, 1899, and that he had disposed of the same prior to the institution of the proceedings to have him adjudged a bankrupt, and had not then, or at the time of filing his answer, any control or ownership of said sum of money, or any part thereof, and that he was unable to inform the court of the disposition he had made of the money, because the disclosure of the facts in relation thereto would tend to incriminate him. After this answer was filed the bankrupt declined to be cross-examined, and thereupon the court adjudged that he was in contempt of court for refusing to obey the order of the referee to pay over the said sum of $2,500, and committed him to the custody of the marshal, to be held in captivity in the city jail until he should pay to the trustee the said sum of $2,500, or be otherwise discharged by due process of law. The bankrupt petitions this court to set aside the order and judgment committing him to jail upon the ground that the order of the referee was void because he had received no notice of the charge against him upon which it was founded, or of the intention of the trustee to ask for such an order, and had had no opportunity to show cause why it should not be made until after it was made, and because the district court erred in refusing to dismiss the proceedings against him for contempt for failure to comply with the referee's order, and in refusing to permit him to produce testimony to show that he was unable to comply with it.

P. H. Cullen and T. P. Bashaw (J. D. Hostetter, on the brief), for petitioner.

Dorsey A. Jamison (Robert E. Collins and Edwin R. Chappell, on the brief), for respondents.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bankrupt, Rosser, was committed to jail for contempt of court, in that he failed to obey the order of the referee to turn over to the trustee $2,500 alleged to have been a part of his estate when he was adjudged a bankrupt, and to have been in his possession when the order for him to deliver it to the trustee was made. He challenges the order of commitment on three grounds: (1) That conceding that the money was a part of his estate at the time of the adjudication in bankruptcy, and that he had control of it when the order for its delivery to the trustee was made, the order of commitment constituted imprisonment for debt, and violated section 16, art. 2, of the constitution of Missouri, and section 8954 of the Revised Statutes of that state; (2) that as a matter of fact the $2,500 was not a part of his estate, and was not in his possession when the order for its payment was made; and (3) that the proceedings which culminated in the order of commitment did not constitute due process of law. These objections will be considered in their order.

The power of a court to punish for contempt of its proceedings, for disobedience of its lawful orders, is inherent in the being of every court of general jurisdiction. Without it the orders of a court would

be without force or effect, would command neither respect nor obedience, and there would be neither warrant nor reason for its longer existence. From the earliest annals of our law this power has been exercised. It rests upon the fundamental principles of judicial establishments, and is inseparable from the existence, as well as from the usefulness, of a court of general jurisdiction. 4 Bl. Comm. 286; State v. Matthews, 37 N. H. 451; Watson v. Williams, 36 Miss. 331; Hurd, Hab. Corp. 7; Ex parte Crenshaw, 80 Mo. 447, 453; In re Knaup, 144 Mo. 653, 667, 46 S. W. 151. The act to establish a uniform system of bankruptcy throughout the United States (30 Stat. 544, c. 541) vests in the district courts of the United States the power to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided [section 2, subd. 7]; * * * punish persons for contempts committed before referees [section 2, subd. 16]." The effect of an adjudication in bankruptcy is to place all the property of the bankrupt not exempt by law in the custody of the district court, and to charge the bankrupt, and all other persons who have the possession or control of any of it, as trustees for the court and for the trustee in bankruptcy, who is subsequently appointed. The act of congress requires the bankrupt to "comply with all lawful orders of the court" (section 7, subd. 2); forbids him to "disobey any lawful order, process, or writ" issued by the referee (section 41, subd. 1); subjects him to the punishment of imprisonment for a period not exceeding two years for knowingly and fraudulently concealing, while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy (section 29b); or for making a false oath or account in or in relation to any proceeding in bankruptcy (section 29b, subd. 2). There can be no doubt that under the general rules of law and under these specific provisions of the bankrupt act the court and the referee were vested with the right and subjected to the duty of making the necessary orders to require the bankrupt and all other persons who had the possession and control of the property of the bankrupt estate to surrender and deliver it to the trustee. Such orders constitute one of the essential means by which the court and the referee are empowered to collect the estate of the bankrupt. It is a broad and comprehensive power, and great caution should be exercised to observe its limits and to issue under it only lawful orders. But, without its lawful exercise, the administration of the estates of bankrupts would in many cases be so complicated and tedious that all the assets would be wasted in litigation, and the beneficent purpose of the bankrupt law would fail of accomplishment. Two essential facts limit this power and condition its lawful exercise. They are that the money or property directed to be delivered to the trustee or other officer of the court is a part of the bankrupt estate, and that the bankrupt or person ordered to deliver it has it in his possession or under his control at the time that the order of delivery is made. If the property is not a part of the estate, obviously no lawful order for its delivery to the trustee can be made. If the money or property in controversy was a part of the estate of the bankrupt, but

before the order for its delivery is made he has squandered, disposed of, or lost it, so that it is not in his control or possession, and he cannot obtain and deliver it at the time the order of delivery is made, or within a reasonable time thereafter, it cannot be a lawful order, because the court may not order one to do an impossibility, and then punish him for refusal to perform it. The punishment of the bankrupt for such acts must be sought under the provisions of the bankrupt law relative to the fraudulent concealment of the property of the estate and the making of false oaths relative thereto. But, if it appears to the satisfaction of the referee or the court that property of the bankrupt estate is in the control or possession of the bankrupt, a lawful order for its delivery to the trustee may be made, and a refusal to obey this order may be punished as a contempt of court, both under the general law relative to contempts and under the specific provisions of the bankrupt act.

The contention that the commitment of a contumacious bankrupt to jail until he complies with such an order constitutes imprisonment for debt, and is prohibited by the constitution of Missouri, is untenable. Such an order is not an order for the payment of a debt. All the property of the bankrupt estate is placed in custodia legis by the adjudication in bankruptcy. Every part of the estate belongs to the court, and vests in the trustee when appointed, and the bankrupt and every other party who has the possession or control of any part of it holds that part as the agent and trustee of the court and its officer. The money or the property of the estate which a bankrupt thus holds is not a debt which he owes to the court or to the trustee, but it is the money or property of the court or of the trustee, which it is alike the duty of the court, of the referee, and of the bankrupt to place in the hands of the trustee in bankruptcy for distribution to the creditors pursuant to the provisions of the bankrupt law. An order for the payment of money or the delivery of property, which is a part of the estate in bankruptcy, and which is in the control and possession of the party directed to pay or deliver it, at the time of the making of the order, is not an order for the payment of a debt, and a commitment to jail until such order is complied with is not imprisonment for debt, under section 16, art. 2, of the constitution of Missouri, and section 8954 of the Revised Statutes of that state. In re Purvine, 37 C. C. A. 446, 448, 96 Fed. 192, 194; In re Salkey, Fed. Cas. No. 12,253; Id., Fed. Cas. No. 12,254; In re Knaup, 144 Mo. 653, 667, 46 S. W. 151; Ex parte Crenshaw, 80 Mo. 447, 453; Coughlin v. Ehlert, 39 Mo. 285, 286; Roberts v. Stoner, 18 Mo. 481, 484; Burt v. Packing Co. (Minn.) 57 N. W. 940, 941; State v. Becht, 23 Minn. 411, 413; State v. Mauberret, 47 La. Ann. 334, 335, 16 South. 814.

The second objection to the order of commitment is that the evidence in this case does not establish either the fact that the $2,500 which the bankrupt was ordered to pay to the trustee was a part of his estate, or that he had the possession or control of it at the time that the order for its payment was made. These, however, were questions of fact, which it was the duty of the referee or of the court below to ascertain and determine when the order for the payment of

the money was made. They are not here for our consideration, nor is this court empowered to review the finding of the referee or of the district court upon them. This is a petition for a revision of the proceedings of the district court under section 24, subd. b, of the bankrupt act, and under that subdivision the jurisdiction of the circuit courts of appeals is restricted to the consideration of matters of law, and does not embrace the review of questions of fact. In re Purvine, 37 C. C. A. 446, 448, 96 Fed. 192, 193.

A more serious question is presented by the contention of the bankrupt, that the proceedings in the court below did not give him such a notice of, and such an opportunity to be heard upon, the propriety of the order for the payment of this money as constitute due process of law. Chancellor Kent says: "The better and larger definition of 'due process of law' is that it means law in its regular administration through courts of justice." 2 Kent, Comm. 13. While it is perhaps impossible, and is certainly unwise, to attempt to give a concise and comprehensive definition of the terms "due process of law" and "law of the land," it is certain that notice to the party to be affected of the claim against him, and an opportunity to be heard upon it, are essential elements of every proceeding in a court of justice which can be said to constitute due process of law or to be in accord with the law of the land. "Perhaps no definition," says Judge Cooley, "is more often quoted than that given by Mr. Webster in the Dartmouth College Case: 'By "law of the land" is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society.'" Cooley, Const. Lim. 431. The basic principle of English jurisprudence is that no man shall be deprived of life, liberty, or property without due process of law, without a course of legal proceedings according to those rules and forms which have been established for the protection of private rights. Such a course must be appropriate to the case and just to the party affected. It must give him notice of the charge or claim against him, and an opportunity to be heard respecting the justice of the order or judgment sought. The notice must be such that he may be advised from it of the nature of the claim against him, and of the relief sought from the court if the claim is sustained. And the opportunity to be heard must be such that he may, if he chooses, cross-examine the witnesses produced to sustain the claim, and produce witnesses to refute it, if a question of fact is in issue, and, if a question of law is presented, the opportunity to be heard must be such that his counsel may, if they desire, argue the justice and propriety of the judgment or order proposed. Judicial orders or judgments affecting the lives or property of citizens in the absence of such a notice and opportunity to the party affected are violative of the fundamental principle of our laws, and cannot be sustained. Gentry v. U. S. (C. C. A.) 101 Fed. 51; Burton v. Platter, 10 U. S. App. 657, 663, 4 C. C. A. 95, 99, 53 Fed. 901, 905; Windsor v. McVeigh, 93 U. S. 274, 277, 278, 23 L. Ed. 914; Capel v. Child, 2 Cromp. & J. 558, 574; Hovey v. Elliott, 167 U. S. 409, 414,

416, 446, 17 Sup. Ct. 841, 42 L. Ed. 215; Galpin v. Page, 18 Wall. 350, 368, 21 L. Ed. 959; Underwood v. McVeigh, 23 Grat. 409, 413; Henry v. Carson, 96 Ind. 412; Hovey v. Elliott, 145 N. Y. 126, 39 N. E. 841; Taussig's Ex'rs v. Glenn, 4 U. S. App. 524, 541, 2 C. C. A. 314, 318, 51 Fed. 409, 413; Merrill v. Rokes, 12 U. S. App. 183, 188, 4 C. C. A. 433, 435, 54 Fed. 450, 452.

The claim against the bankrupt, upon which the order for his payment of the $2,500 is based, was that this money was a part of his estate, and that he had the possession and control of it on July 20, 1899, when the referee made the order upon him to pay it to the trustee. Under the principle to which reference has been made, he was entitled to a citation or notice of a hearing upon this claim and of the proposed order before it was made. In Galpin v. Page, 18 Wall. 350, 368, 21 L. Ed. 963, the court said:

"It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court; by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered."

In Capel v. Child, 2 Cromp. & J. 558, 574, Lord Lyndhurst said:

"A party has the right to be heard for the purpose of explaining his conduct; he has a right to call witnesses for the purpose of removing the impression made on the mind of the bishop; he has a right to be heard in his own defense. On consideration, then, it appears to me that, if the requisition of the bishop is to be considered a judgment, it is against every principle of justice that that judgment should be pronounced, not only without giving the party an opportunity of adducing evidence, but without giving him notice of the intention of the judge to proceed to pronounce the judgment."

It is an axiom of pleading and practice that one may not bring a suit for one cause of action and recover a judgment for another, much less may one recover an order or judgment for money and property without any suit or notice of the claim upon which it is founded. Gentry v. U. S. (C. C. A.) 101 Fed. 51. In the case in hand no notice was given to the bankrupt that any hearing would be had upon any claim that he should be required to pay over the $2,500 in controversy before the order to that effect was made. No order to show cause why he should not pay it was made or served upon him before the absolute order for its payment was presented to him. No opportunity was afforded him to be heard upon the questions it presents. He was cited to appear and be examined under section 21 of the bankrupt act, and his testimony and that of various other witnesses were taken before the referee upon that citation, but no notice was served upon him that the claim, which culminated in the order for the payment of the $2,500, was made or was in issue at that examination, or that the testimony there elicited was taken for the purpose of establishing that claim, and no opportunity was presented to him to produce witnesses in his defense or to be heard upon the issues of fact or of law which the issue of the order involved. Such a proceeding lacks every element of due process of law. It contains no notice to the party affected of the claim against him, or of the proposed action upon it, no opportunity to contest the questions of fact which

it presents by the cross-examination of the claimant's witnesses or the presentation of his own, and no chance to be heard upon the questions of law which it involves. It considers without notice, condemns without hearing, and renders judgment without trial. The order of the referee was unlawful and void.

The subsequent proceedings failed to extract the vice of this order. The first notice which the bankrupt received of the order was its service upon him five days after its date. He answered that he was unable to comply with the order, because he had no money to pay to the trustee. The testimony taken on the examination under section 21, the order of the court, and the answer of the bankrupt were then certified to the district court. A petition was filed by the trustee in that court, in which he set forth the order of the referee, and that the bankrupt had failed to comply with it, and prayed that he might be adjudged in contempt of court therefor. Notice was duly given to the bankrupt that a hearing upon this petition would be had on August 24th. On August 25th the bankrupt appeared in the district court before Judge Rogers, set forth that he had never been notified of the intention of the trustee to ask the referee to make the order for the payment of the $2,500, that he had never been given an opportunity to show cause why it should not be made or to be heard in the premises, and moved the court that the proceedings against him for contempt be dismissed, or that he be given an opportunity to take the testimony of witnesses for the purpose of showing that he was unable to comply with the order. All the proceedings for contempt were founded upon the order of the referee. That order was void, and the district court should have granted the motion to dismiss the proceedings for contempt of court for its disobedience. It overruled the motion, and announced to the counsel for the bankrupt that it would give the latter an opportunity to be cross-examined before the court upon any of the matters and things upon which he had been examined before the referee, and upon any other matters tending to show what had become of the $2,500 he had been ordered to surrender, or tending to show his inability to comply with the order of the referee in the premises. On the next day, August 26, 1899, the bankrupt answered that he was unable to comply with the order of the referee, because he was unable to procure the $2,500 or any part thereof; that he borrowed that sum of money on March 17, 1899, and had disposed of it before the institution of the proceedings in bankruptcy, so that he had not then, nor at the time of his answer, any right, control, title, or ownership of said sum of money or any part thereof. He declined to be cross-examined, and the court thereupon adjudged him guilty of contempt for his failure to comply with the order of the referee, and committed him to the custody of the marshal until he should pay the $2,500. The fundamental error in all these proceedings is that there was no notice to the bankrupt, either before the referee or before the court, of any hearing upon the claim of the trustee that he had $2,500 of the bankrupt estate in his possession which the trustee asked the referee or the court to order him to pay over, and there was no opportunity for him to be heard upon the questions of fact and of law which that claim presented.

There were various methods by which this notice and hearing could have been given. An order to show cause why the $2,500 should not be directed to be paid over by the bankrupt to the trustee, fixing a time and place for hearing, might have been issued by the referee or by the court, and properly served. At that hearing an opportunity might have been given to the trustee and to the bankrupt to present their evidence, to cross-examine the witnesses of each other, and to be heard upon the questions of fact and of law in issue, and the referee or the court might then have made a finding of the essential facts, and have issued the proper order. If the bankrupt then refused to obey it, the court, after a hearing upon notice or upon an order to show cause, might have adjudged the bankrupt in contempt for a refusal to obey the order, if the facts and the law warranted that judgment. Nothing equivalent to the course suggested can be found in this record. The bankrupt never had any notice of the presentation or hearing of the claim against him for the $2,500 until after the order for its payment was made. The permission of the court for his cross-examination upon the hearing in the proceedings for contempt failed to extract the fatal vice of this defect. It gave him no opportunity to produce testimony of other witnesses, or to have an original hearing of the questions involved in the order of the referee. Those questions had already been determined without notice or hearing, and the question the court was considering was whether he should be punished for a failure to obey the order that had determined them. All the proceedings of the district court rested on the theory that the order of the referee was valid. For this reason no notice of a hearing and no opportunity to be heard upon the crucial questions which determined the propriety of that order were given in the district court, and, as no such notice or opportunity was given before the referee, all the proceedings from the close of the examination, under section 21 of the bankrupt act, to the judgment for contempt, are without force, and must be set aside. The judgment of contempt and commitment is hereby vacated and annulled, and this fact will be certified to the district court.