### In re ADLER.

(District Court, E. D. Oklahoma. November, 1908.)

1. BANKRUPTCY (§ 228*)—WITHHOLDING ASSETS—ORDERS—REVIEW.

A bankrupt's petition to review a referee's order requiring payment of money alleged to be withheld from the trustee raises the same questions as would be involved in a proceeding on citation for contempt, and hence the case would be so treated.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.*]

2. BANKRUPTCY (§ 136*)—WITHHELD ASSETS—PAYMENT TO TRUSTEE—ORDER.

A referee's order requiring a bankrupt to pay money alleged to have been withheld from the trustee is unsustainable, unless it is proven that

---

the money directed to be delivered to the trustee is a part of the bankrupt's estate and that the bankrupt had it in his possession or under his control at the time the order of delivery is made, so that it may be enforced by contempt proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 235; Dec. Dig. § 136.*]

3. BANKRUPTCY (§ 136*)—WITHHELD ASSETS—DELIVERY TO TRUSTEE—ORDER.

Where the bankrupt testified at the first meeting of creditors that he had no money or property in his possession or control for which he had not accounted, a referee's order directing that he pay to the trustee money alleged to have been withheld, based mainly on approximate estimates, inferences, and conjectures which raised a strong suspicion that assets had been withheld, but which did not constitute direct and conclusive proof thereof, was insufficient to sustain the order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 235; Dec. Dig. § 136.*]

Bledsoe & Bledsoe, for bankrupt.
Potterf & Walker, for trustee.

CAMPBELL, District Judge. This matter comes up on petition of the bankrupt to review an order of the referee entered in this case on the 14th day of February, 1908, directing the bankrupt to turn over to the trustee herein, on or before the 25th day of said month, the sum of $1,000, which the referee certifies he finds the bankrupt has in his possession and control, and which he has failed to pay over to the trustee, $500 thereof being money which the referee finds to have been paid over to A. Handmaker, of Louisville, Ky., a brother-in-law of the bankrupt, prior to the institution of the bankrupt proceedings, and $500 which the referee estimates to be in the bankrupt's hands from sales made within the four months preceding the adjudication in bankruptcy.

The testimony relied upon is that of the bankrupt and others, taken at the first meeting of the creditors, which I have carefully read. The bankrupt denies, under oath, having any money or any property that has been sold and not disclosed, or that he has paid any person any money to be held for him until these proceedings are over. While the testimony indicates that the business was run in a most careless manner, to place the most charitable construction upon it, and many things were done in the last four months preceding bankruptcy which give grounds for suspicion of the good faith of the bankrupt, the only testimony which might be said to clearly indicate that the bankrupt had in his possession or under his control at the time of the institution of the bankruptcy proceedings money or property which he failed to account for is that of the witness Howard Martin, who details a conversation between himself and the bankrupt a few days before, at which time he testifies the bankrupt showed some money, the amount of which is not definitely stated, which he claimed to have gotten out of the M. & P. Bank on his personal check.

Ordinarily in cases of this character, where the bankrupt conceives the order of the referee to be invalid, he refuses to obey the order, whereupon the referee certifies the facts to the judge, for a summary hearing and punishment as for contempt, if he finds the fact warrants

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it. While this case comes up on petition of the bankrupt to review the order of the referee, it practically raises the questions which would come up on 'a citation for contempt, for the reason that, unless the order is one the enforcement of which can properly be effected by imprisonment for contempt, it would be a futile order to make, and the case will therefore be treated as one in which an order has been disobeyed and is before this court in a contempt proceeding.

I have carefully examined the authorities cited by counsel in the briefs filed in this matter. So far as this district is concerned, the rules which must control this court in matters of this character have been very clearly laid down by the United States Circuit Court of Appeals for the Eighth Circuit, in the cases of In re Rosser, 4 Am. Bankr. Rep. 153, 101 Fed. 562, 41 C. C. A. 497, and Boyd v. Glucklich, 8 Am. Bankr. Rep. 393, 116 Fed. 131, 53 C. C. A. 451, a case similar in many respects to the one at bar. In the former case Judge Sanborn, speaking for the court, says:

"There can be no doubt that under the general rules of law and under these specific provisions of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) the court and the referee were vested with the right and subjected to the duty of making the necessary orders to require the bankrupt and all other persons who had the possession and control of the property of the bankrupt estate to surrender and deliver it to the trustee. Such orders constitute one of the essential means by which the court and the referee are empowered to collect the estate of the bankrupt. It is a broad and comprehensive power, and great caution should be exercised to observe its limits and to issue under it only lawful orders. But without its lawful exercise, the administration of the estates of bankrupts would in many cases be complicated and tedious, all the assets would be wasted in litigation, and the beneficent purpose of the bankruptcy law would fail of accomplishment. Two essential facts limit this power and condition its lawful exercise. They are that the money or property directed to be delivered to the trustee or other officer of the court is a part of the bankrupt estate, and that the bankrupt or person ordered to deliver it has it in his possession or under his control at the time that the order of delivery is made. If the property is not a part of the estate, obviously no lawful order for its delivery to the trustee can be made. If the money or property in controversy was a part of the estate of the bankrupt, but before the order for its delivery is made he has squandered, disposed of, or lost it, so that it is not in his control or possession, and he cannot obtain and deliver it at the time the order of delivery is made, or within a reasonable time thereafter, it cannot be a lawful order, because the court may not order one to do an impossibility and then punish him for refusal to perform it. The punishment of the bankrupt for such acts must be sought under the provisions of the bankruptcy law relative to the fraudulent concealment of the property of the estate and the making of false oaths relative thereto. But if it appears to the satisfaction of the referee or the court that property of the bankrupt estate is in the control or possession of the bankrupt, a lawful order for its delivery to the trustee may be made, and a refusal to obey this order may be punished as a contempt of court, both under the general law relative to contempts and under the specific provisions of the bankruptcy act."

It will be seen from the foregoing authority that not only must the money or property ordered to be turned over be a part of the bankrupt's estate, but it must also be established that it is in the possession or under the control of the bankrupt. As said by Judge Caldwell, in Boyd v. Glucklich, supra:

"Inability to comply with the command of the court is always a complete defense to a charge of a contempt. It cannot be imputed to any one that he

is guilty of a contempt of court for neglecting or refusing to do what it appears is out of his power to do. An order of commitment in such a case is void. The ability of the bankrupt to comply with the order of the court must be made to appear before he can be punished for contempt. And it must be made to appear by evidence which leaves no reasonable doubt in the mind of the court on that subject. Evidence which is merely persuasive cannot suffice. He cannot be imprisoned for the purpose of exploitation. Torture as a means of extracting evidence or forcing a confession is no longer allowable, either in criminal or civil proceedings. When imprisonment for debt was lawful, a creditor frequently imprisoned his debtor in the hope and expectation that his friends or relatives would pay the money required to release him from an imprisonment which otherwise would apparently end with his life. But no such practice is permissible under the bankruptcy act. In the printed record before us, which is all we have to consider, there is no direct evidence to show that the bankrupt has the money, save two or three small items mentioned in the referee's order. The referee's conclusion seems to have been reached mainly, if not altogether, by 'approximate' estimates, inferences, and conjectures, which, while they give rise to very strong suspicion, fall far short of direct and conclusive proofs. The sea of suspicion has no shore, and the court that embarks upon it is without rudder or compass. No man can be imprisoned for a constructive contempt on suspicion or conjectures, or upon inferences which may or may not be well founded. For this reason, from the earliest times the doctrine has obtained that when one accused of a constructive contempt in a court of law denies positively and specifically, under oath, the alleged contempt, the proceedings against him for contempt must be dismissed."

The bankrupt testified positively at the first meeting of creditors in this case that he had not any money or property in his possession or under his control for which he had not accounted. While other evidence in the case tends to contradict the bankrupt and throw suspicion upon the truth of his testimony, it does not do more than raise a suspicion in the mind of the court, and in view of all the testimony in this case, under the rules laid down by the authorities above cited, which are conclusive upon this court, it is my opinion that the order of the referee is not supported by sufficient testimony to warrant this court to order the imprisonment of the bankrupt for contempt for his failure to obey the referee's order. As pointed out by Judge Caldwell, in the case of Boyd v. Glucklich, supra, if the bankrupt has concealed from the trustee any of the property belonging to the estate, or has made a false oath in relation to this proceeding, in any manner, he is subject to criminal prosecution as provided by the bankruptcy act. This is a matter to be reached by regular procedure on the criminal side of the court.

If I am correct in the conclusion that the evidence upon which this order is based is not sufficient to warrant this court to order the bankrupt imprisoned for contempt, should he fail to obey it, then it follows that the order should not have been made. An order which cannot be enforced is a dead letter. The order will therefore be annulled and set aside. It is so ordered.