## LUETKEMEYER CO. v. MURDOCK.

## MURDOCK v. LUETKEMEYER CO.

(Circuit Court of Appeals, Sixth Circuit. April 9, 1920. On Motion for Re-hearing October 16, 1920.)

Nos. 3331, 3332.

Sales ☞77(1)—Contract for binding twine held definite and certain as to price.

A no-price contract for sale and purchase of binding twine, made in accordance with the custom of the trade, providing that the price should be one cent per pound below the "price to be made by the International Harvester Company for 1917," the contract being closed and a large part of the twine delivered thereunder prior to April 7, 1917, *held* rendered definite and certain as to price by the issuance on that day of a notice by the International Company fixing the price of twine under its contracts previously made, and not affected by the fact that such company reserved the right to, and did later, fix a different price to govern contracts thereafter made.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by Samuel T. Murdock, successor to the Indianapolis Cordage Company, against the Luetkemeyer Company, formerly the Lockwood-Luetkemeyer-Henry Company. From the judgment, both parties bring error. Reversed.

Wm. B. Cockley, of Cleveland, Ohio, for plaintiff.

Walter L. Flory, of Cleveland, Ohio, for defendant.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. There is no dispute as to the amount due on the first cause of action. The second cause of action involves the construction of a written contract in the words and figures following, to wit:

"Cleveland, December 15, 1916.

"Indianapolis Cordage Co., Indianapolis, Ind.—Gentlemen: Enter our order for 100 tons sisal or standard binder twine, to be taken at our option on or before May 1, 1917, at 1c. per lb. less than carload price to be made by the International Harvester Co. for 1917.

"Yours very truly,        The Lockwood-Luetkemeyer-Henry Co.,
"Per H. Hutchisson."

This order was accepted by the Cordage Company. In March, 1917, the Luetkemeyer Company elected to take under this option contract, and prior to April 7, 1917, 87,000 pounds of twine were delivered by the Cordage Company to the Luetkemeyer Company in part performance thereof, and the same was received by that company and payments made from time to time upon account. The validity of this contract is not challenged by either party to this action, but, on the contrary, each seeks to recover upon the terms and conditions written therein.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This contract is in no sense doubtful or ambiguous in its terms. It provides for a definite amount of twine to be furnished by the Cordage Company to the Luetkemeyer Company on or before May 1, 1917, and also provides how the price to be paid for the twine so delivered may be definitely fixed and ascertained. Therefore, in the construction of this contract and the determination of the rights of the parties thereto, oral evidence is pertinent only in so far as that evidence tends to establish, by the method provided in the contract itself, the price to be paid for this twine.

Upon this subject there is no conflict in the evidence; therefore the question here presented is not one of fact, but of law. It is conceded that the International Harvester Company is one of the largest dealers in sisal or standard binder twine, and that the prices fixed by this company and the Plymouth Cordage Company govern the prices of other dealers. It also appears from the undisputed evidence that it was the custom of the International Harvester Company to make contracts of the character here under consideration, and known to the trade as priceless contracts, during the late fall and early spring of each year, and later fix a price that would govern and control these contracts; that other dealers followed this same trade custom, but instead of reserving to themselves the right to fix this price agreed that the price fixed by the International Harvester Company would be the basic price subject to such discount as agreed upon by the parties.

There is evidence that it was the custom of the International Harvester Company to fix a price that would control throughout the season, but it also appears from the evidence of the plaintiff that in some seasons prior to 1917 it changed the price at least once and perhaps oftener. During the fall and spring of 1916–17 the International Harvester Company entered into a number of contracts for the sale of binder twine, similar to the contract in suit. On April 7, 1917, it notified its sales department that the price of sisal or standard binder twine would be 15⅝ cents per pound on less than carload lots for all twine furnished or agreed to be furnished by it under priceless contracts taken prior to that date, but that no other or future order should be taken at that price; that in the near future it would quote new prices for twine based upon the then current prices for fiber. This order of the Harvester Company did not in terms direct its sales department to cease operations in the sale of binder twine; but it was evidently so understood, for on the 23d of April, 1917, the Harvester Company issued another order to its sales department, directing it to renew operations in the sale of twine for 1917 harvest, using only the priceless contract, specifying therein that prices would be named on or before May 15th. On May 16th it fixed a price of 19¼ cents per pound on quantities less than carload lots, with the usual allowance of ¼ cent per pound on carload lots. It does not appear from the evidence that this price was changed by the Harvester Company during the season of 1917.

The dispute between the parties to this action is whether the price fixed by the Harvester Company on April 7th or the price fixed by

that company on May 16th applies to the contract in suit. The trial court found that neither of these prices fixed by the International Harvester Company was the price contemplated by the parties to this contract, and therefore disallowed the plaintiff's claim for damages for alleged breach of contract by the defendant, and dismissed the defendant's cross-petition for damages based upon the alleged breach by plaintiff, and thereupon entered judgment in favor of plaintiff on his first cause of action, concerning which there is no dispute, and upon his second cause of action for the amount asked for the 87,000 pounds of twine furnished by him to defendant under this contract, upon the theory that that amount was its reasonable value.

Plaintiff's cause of action, however, was not based upon quantum meruit, but on contract; therefore evidence touching the reasonable value at the time it was delivered would not have been competent. No evidence tending to prove value was offered, except the prices fixed by the Harvester Company April 7 and May 16, 1917, and the price that defendant was required to pay for 113,000 pounds in June of that year. This evidence was offered and properly admitted as relevant to the issues joined by the pleadings.

If the trial court was right in its conclusion that this contract failed by reason of the fact that the International Harvester Company did not fix a price within the meaning and intent of the parties thereto, its judgment as to the reasonable value of twine furnished in 1917 is not only not sustained by any competent evidence, but is contrary to the only evidence that, under any view of this case, could have been appropriated by the court in determining value.

It is conceded that the price fixed by the International Harvester Company is substantially the market price for binder twine. The reasonable value, of course, must be determined by the market price. At the time this 87,000 pounds of twine were delivered to defendant, or at any time before April 7, 1917, the defendant could have purchased it directly from the International Harvester Company upon a priceless contract for 15⅝ cents per pound. It cannot now be required to pay more than that market price for the twine delivered to it in March, because of the increased price in May and June of that year.

It appears in the letter of the Harvester Company of April 7, 1917, to its sales department, that it would in the very near future quote new prices for twine based upon the then current prices for fiber. Evidently the price quoted on that date was based upon the current prices for fiber at that time and prior thereto, and it is undoubtedly due to this increase of price in fiber from and after April 7, 1917, that the market price for binder twine advanced to 19¼ cents per pound; but this increase in May and June does not affect values in March of that year.

We are of the opinion, however, that the District Court erred in its finding the contract void by reason of the failure of the International Harvester Company to fix a price within the meaning of its terms. The Harvester Company did fix a price that applied to all priceless contracts made and entered into by it prior to April 7, 1917.

It was undoubtedly the intent and purpose of the parties to this contract that whatever price the International Harvester Company should fix, as applicable to its own contracts written during the same period of time, should apply to this contract.

It appears from Plaintiff's Exhibit No. 30 that the usual allowance made by the Harvester Company on carload lots was $\frac{1}{4}$ cents per pound. Yet the Cordage Company, evidently for the purpose of securing this business, agreed with the defendant that it would make to it an allowance of 1 cent per pound on the price named by the Harvester Company on less than carload lots. It is therefore apparent that it was not the purpose and intent of the parties to this contract, and particularly of the Cordage Company, that its customers would be required to pay almost 4 cents a pound more than the price at which they could purchase the same quality of twine from the Harvester Company, but, on the contrary, that its customers should have an advantage over the customers of that company of $\frac{3}{4}$ of a cent per pound when the same was purchased in carload lots.

In view of the well-known custom of the trade, the words "for 1917," appearing in this contract, must be construed to mean that any price fixed by the Harvester Company for any period of time should control the transactions within that particular period, and that, if this price should later be increased or diminished, such later price should attach to all transactions within the period covered thereby.

For the reasons above stated, the judgment of the District Court is reversed, and the cause remanded for a new trial in accordance with this opinion.

On Motion for Rehearing.

PER CURIAM. This motion for rehearing challenges for the first time the jurisdiction of this court to consider and determine the question of the sufficiency of the evidence, for the reason that the question was not properly raised in the court below. If this were the only reason for the reversal of this judgment, this motion would be allowed.

This judgment, however, was reversed for the further reason that it was not responsive to the issue joined by the pleadings or to the evidence offered by either party upon the trial of the cause. Merrill v. Rokes, 54 Fed. 450, 4 C. C. A. 433; Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464.

For this reason, the motion for rehearing is overruled. However, on the retrial of this cause by the District Court, that court is hereby directed to disregard all that portion of the opinion of this court heretofore filed touching the question of the sufficiency of the evidence.