### BURTON et al. v. PLATTER.

### SAME v. SAME.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

### Nos. 118 and 140.

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW.
   In an action for the recovery of personal property brought by an assignee in insolvency against his assignor and certain judgment creditors, who have obtained possession of the property, and who are sureties on the cross bond given by the assignor for the retention thereof, where the only question at issue under the pleadings is the right of possession, and no notice of intention to rely on the bond as a cause of a action has been given before trial, and no proof thereof made at the trial, a money judgment against the sureties as such, unless specially authorized by statute, is given on a cause of action totally different from that pleaded and tried, and is void for want of due process of law.

2. FRAUDULENT CONVEYANCES—PROCEDURE.
   An assignment for the benefit of creditors should not be set aside as fraudulent in respect to creditors not secured by it, unless it is pleaded and proved that there were such unsecured creditors at the time of its execution, or that it was made with the intention of contracting debts which the assignor had no reasonable grounds to believe he could pay, and that such debts were actually contracted.

3. SAME—EVIDENCE.
   In an action to set aside a conveyance or assignment as a fraud upon creditors, judgments against the assignor are no evidence against the assignee or other strangers of the previous existence of the indebtedness on which they are founded.

4. ASSIGNMENT FOR BENEFIT OF CREDITORS—ORAL AGREEMENT VARYING WRITTEN CONTRACT.

An assignor for the benefit of creditors who repossesses himself of the goods assigned cannot, in an action of replevin by the assignee, set up as a defense a contemporaneous oral promise by the latter to keep up the stock of goods, in opposition to the terms of the written assignment.

5. SAME—RESCISSION.

The failure of an assignee for the benefit of creditors (the assignment being in writing) to perform a contemporaneous oral promise to disregard some of its provisions is not such fraud as to authorize the assignor, in the absence of mistake· on his part, to rescind the contract of assignment.

6. REPLEVIN—PROPERTY INACCESSIBLE—MONEY JUDGMENT.

In a code action for the recovery of possession of personalty under Mansf. Dig. Ark. § 5181, in force in the Indian Territory, by Act May 2, 1890, (26 St. at Large, p. 95,) where the court finds, or the evidence conclusively proves, that the property cannot be returned by the defendant, a simple money judgment for its value may be rendered against him, without the alternative of returning the property.

7. PRACTICE—TRANSFER FROM LAW TO EQUITY DOCKET — WAIVER OF IRREGULARITIES.

Where an action at law in the Indian Territory, wherein there is no cause of action or defense pleaded that is not as good at law as in equity, and which should be tried at law, is transferred to the chancery docket, and heard and tried by the master, all the parties agreeing thereto, and participating in the proceedings, all irregularities of procedure are waived.

In Error to the United States Court in the Indian Territory. Appeal from the United States Court in the Indian Territory.

At Law. Action by Henry Platter, assignee for the benefit of creditors of Richard B. Burton, against said Richard B. Burton, to recover the possession of personal property wrongfully detained. Certain creditors of the defendant intervened, and were made parties defendant. By agreement of all parties, the case was transferred to the chancery docket. Decree for plaintiff. Defendants appeal, and also bring error. Reversed in part, and affirmed in part.

Statement by SANBORN, Circuit Judge:

In these cases the same parties prosecute a writ of error and an appeal to reverse a decree in chancery rendered in a code action for the recovery of specific personal property. The appellee and defendant in error will be called the plaintiff; the appellant and plaintiff in error, Burton, the defendant; and all other plaintiffs in error and appellants, interveners.

April 1, 1889, the defendant made an assignment of the property in question to the plaintiff, and delivered its possession to him, to secure the payment of certain creditors of the assignor therein named, whose claims amounted to $9,515.61. The plaintiff employed the defendant as a clerk to assist in disposing of the property, and $2,684.65 had been realized from its sale, and paid over to the secured creditors under the assignment, when the defendant, on August 19, 1889, repudiated it, and held possession of the remainder of the stock of goods for himself. The plaintiff demanded possession of the property, and it was refused. On August 24, 1889, he brought this action for it, and set forth the facts just stated in his complaint. He gave the usual bond for the delivery of the property to himself, and under a proper order from the court, based upon this complaint and bond, the marshal seized the property on August 25, 1889, and on August 28, 1889, the defendant gave a cross bond for the return of the property, and it was redelivered to him. On this cross bond there were six sureties, five of whom are the interveners in this action. On September 5, 1889, these five intereveners obtained judgments by con-

fession against the defendant for amounts aggregating about $3,000, issued executions thereon, and the marshal, in October, 1889, seized and sold the property in question thereunder, satisfied the judgments out of the proceeds, and paid over to the defendant a balance of some $2,000. On April 9, 1890, the interveners filed a petition in this action, in which they pleaded these judgments and executions, the sale thereunder, the satisfaction of their judgments from the proceeds, and the payment of the balance by the marshal to the defendant; averred that, in order to induce the marshal to seize this property under the execution, they gave him a bond of indemnity; that the assignment was fraudulent as to them as judgment creditors, and asked that they be made parties to this action; that the assignment be adjudged void as to them, and that their rights and those of the plaintiff and defendant to the property in question be determined in this action. On the same day the defendant filed his answer, which admitted the allegations of the complaint, and alleged that after the draft of the assignment was made, and before it was executed, the plaintiff orally promised that the stock should not be sold out; that he would furnish new goods to keep it up to its general average; that these goods should be paid for out of the proceeds of the sales of the assigned stock, and that he had not kept these oral promises, but had proceeded according to the provisions of the written assignment in executing his trust. The plaintiff demurred to this answer, and his demurrer was, at the final hearing, sustained. On April 9, 1890, on motion of the interveners, the action was transferred to the chancery docket. On November 30, 1890, the plaintiff filed a motion to dismiss the interveners' petition, which was, at the final hearing, denied. On November 30, 1890, all of the parties to the action stipulated that it should be referred to a special master to hear and report the facts and conclusions of law, and the court so ordered. The master heard the proofs, and made a report, to which exceptions were filed. He reported the amount remaining unpaid on the claims of the secured creditors, and that the value of the property was $8,000, and then found that the plaintiff was entitled to judgment for the property, or the value thereof, against the defendant and the sureties on his bond. The defendant and interveners excepted to this finding; their exception was overruled; and, upon the master's report, a decree was rendered that the plaintiff recover from both the defendant and the interveners the amount unpaid on the secured claims, which was $7,815.63, and the costs of the action. No judgment or decree in the alternative for the return of the property, or the payment of the value of plaintiff's special interest in it, was rendered. The cross bond, upon which the interveners' names appeared as sureties for the defendant, was not pleaded or mentioned, nor was any recovery on its account prayed for in any of the pleadings, or sought by any motion in the case, and it was not introduced in evidence. It is assigned as error that the court rendered a decree for the recovery of money against the defendant, Burton, and his sureties, whereas the only judgment or decree it could have lawfully rendered was one against Burton only, and for the return of the property or its value; that the master and the court should have found the assignment to be fraudulent and void as to the interveners; and that it should have overruled the demurrer to the defendant's answer. There are other assignments of error, but their consideration is not necessary to the determination of this case.

J. E. McKeighan, (Lee, McKeighan, Ellis & Priest and F. P. Blair, Jr., on the brief,) for plaintiffs in error and appellants.

L. C. Krauthoff, (Karnes, Holmes & Krauthoff, on the brief,) for defendant in error and appellee.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, (after stating the facts.) It is a principle that lies at the foundation of all just government that no man shall be deprived of his life, liberty, or property without

due process of law. Every disregard of this principle by courts, legislatures, or citizens tends directly towards distrust, insecurity, disorder, and anarchy. It may be difficult, perhaps impracticable, to give a definition of "due process of law" which would comprehend all cases as they arise, and it is certainly unnecessary to do so. Chancellor Kent says: "The better and larger definition of 'due process of law' is that it means law in its regular administration through courts of justice." 2 Kent, Comm. 13. Certain it is that, in judicial proceedings, due process of law must be a course of legal proceedings, according to those rules and forms which have been established for the protection of private rights. It must be one that is appropriate to the case, and just to the parties affected. It must be pursued in the ordinary manner prescribed by the law. It must give to the parties to be affected an opportunity to be heard respecting the justice of the judgment sought. It must be one which hears before it condemns, proceeds upon inquiry, and renders judgment only after trial.

The course of proceedings through which the interveners stand here adjudged to pay over $7,000, on account of an assumed liability as sureties on the cross bond the defendant gave to obtain a return to him of the personal property replevied in this action, was not of this character. The action in its inception was the ordinary code action for the recovery of personal property lawfully taken, but wrongfully detained, now commonly called an "action of replevin," though it resembles more nearly the old "action of detinue." It was brought by the plaintiff against the defendant, Burton, alone, and the only issue tendered by the complaint when the bond was given, August 28, 1889, was whether the plaintiff or the defendant, Burton, was then entitled to the possession of this personal property.

It is true that the interveners in April, 1890, filed their petition, and became parties to the action, but this was not on account of their possible liability on the cross bond. That was not mentioned in their petition. It was on account of some rights in this property they claimed to have as creditors of the defendant, Burton, and on account of their possible liability on an indemnity bond they had given to the marshal to induce him to seize the property under their executions, some weeks after the cross bond was given. All they sought in their petition was that they might be made parties to the action, that the assignment might be set aside, and "that the respective rights as to said goods of said Platter, trustee, said Burton, and themselves, be adjudicated in this action." The plaintiff demurred to the answer of Burton, and, when the cause went to hearing, the only question at issue was, who was entitled to the possession of the personal property at the commencement of the action? Kay v. Noll, 20 Neb. 380, 385, 30 N. W. Rep. 269; Loomis v. Youle, 1 Minn. 175, (Gil. 150;) Wells, Repl. § 94. No cause of action upon the bond upon which this judgment against the interveners is founded had been pleaded. No recovery upon it had been asked. Indeed, it had not been mentioned in the pleadings; and only five of the six sureties on it were parties to the

action. The entire evidence at the hearing is before us, and the bond was not offered in evidence, nor was it mentioned in the testimony. It is first heard of in these proceedings (after it was filed) in the master's report, filed December 19, 1891, where he finds the value of the property to be $8,000, and that the plaintiff is entitled to judgment against the defendant and the sureties on his bond for said property or its value. It next appears in the decree rendered January 4, 1892, where the court, without rendering any decree in the alternative for the return of the property or its value, as recommended by the master, renders an absolute decree against five of the sureties on the bond for the payment of of $7,815.63, and the costs. In many jurisdictions there are statutory provisions authorizing judgments against sureties where a recovery has been had against their principal by summary proceedings, but even in such cases the method prescribed by the statute must be strictly followed. In the Indian Territory there is no such statute in force. Lamaster v. Keeler, 123 U. S. 376, 390, 8 Sup. Ct. Rep. 197.

Nothing can better illustrate the injustice and irregularity of this proceeding than the statement of these facts. No notice of the ground on which the judgment was to be rendered, no opportunity to contest their execution of the bond or their liability upon it, was given to any of these interveners until after the hearing was concluded, and the master's report filed. To all these they were entitled as a matter of right, by the rules and forms established by the courts for the protection of private rights. No rule is more salutary or better settled in the courts than that one may not bring and try his suit upon one cause of action, and recover a judgment or decree upon another. In an action of ejectment he cannot have judgment upon a promissory note which is neither pleaded nor proved; nor can he, in an action of replevin, where the only question at issue is the right to the possession of personal property, without notice, pleading, or proof, recover a decree or judgment upon a bond. A judgment or decree, to be valid, must be according to the allegations and the proofs. This judgment is according to neither, and upon this ground, so far as the interveners are concerned, it must be reversed. Taussig v. Glenn, 51 Fed. Rep. 409, 413, 2 C. C. A. 314; 1 Black, Judgm. § 242.

This disposes of the judgment for money against the interveners; but it is claimed by them and by the defendant that the plaintiff was not entitled to the possession of the property or to any judgment against any one, because the assignment was fraudulent and void as to creditors, and numerous errors are assigned because the master did not so find and the court did not so decree. In the rulings here complained of there was no error. The assignment was made April 1, 1889. The plaintiff took and held possession under it until August 19, 1889. During this time he employed the defendant, Burton, as his clerk. The claims of the creditors secured by the assignment amounted to $9,515.61, and the plaintiff had realized from the property, and paid on these secured claims, $2,684.65, when, on August 19, 1889, the defendant, Burton, repudiated his assignment, and held possession of the property remaining for himself. Its value was $8,000, and plaintiff demanded it. These facts are alleged in the

complaint, and were nowhere denied. The answer of the defendant does not aver that at the time of the execution of the deed of assignment, or at any time prior to April 9, 1890, when it was verified, he was insolvent, or even indebted to any one not secured by the assignment. The only reference in this answer to any creditor is an allegation that, by the failure of plaintiff to comply with certain parol promises, the defendant had been "forced into an apparent attempt to work a fraud on his other creditors." There is no statement who such other creditors were, or when the indebtedness to them accrued, or what its amount was.

On August 25, 1889, the plaintiff replevied the property. On August 28, 1889, it was returned to the defendant on his cross bond. On April 9, 1890, the interveners filed their petition to be made parties, and asked that the assignment be adjudged void. They filed no other pleadings, and in this petition they alleged that "at the September term last of this court, and on the ——— day of said term, they obtained judgments against Robert D. Burton, defendant above named, in the following amounts, namely: Eby, Dowden & Co., in the sum of $247.64; Wood Manufacturing Company, in the sum of $613.00; Webb Wooden-Ware Company, in the sum of $574.85; Myer Bros. Drug Company, in the sum of $186.12; L. Sawyer & Co., in the sum of $1,243.60,"—aggregating $2,865.21, and that, under executions upon these judgments, the marshal took the replevied property from Burton, sold it, and satisfied their judgments from the proceeds. At the hearing, it was proved that these judgments were rendered on the confessions of Burton, September 5, 1889. There were no other allegations or proofs as to the time when the indebtedness shown by these judgments was incurred, or that the defendant ever owed any other indebtedness not secured by the assignment.

One who attacks an assignment on the ground that it is fraudulent as to those who become creditors of the assignor subsequent to its execution must allege and prove that the assignor made the conveyance with the actual intent to defraud, with the intent to put the assigned property out of the reach of debts which he intended thereafter to contract, and which he had reasonable grounds to believe he would not be able to pay, and that he subsequently did contract such debts in pursuance of that fraudulent intent. Even a voluntary conveyance is not fraudulent per se as to subsequent creditors. Horbach v. Hill, 112 U. S. 144, 149, 5 Sup. Ct. Rep. 81; Clark v. Killian, 103 U. S. 766, 769; Wallace v. Penfield, 106 U. S. 260, 1 Sup. Ct. Rep. 216; Graham v. Railroad Co., 102 U. S. 148, 153; Cunningham v. Williams, 42 Ark. 170, 173; Toney v. McGehee, 38 Ark. 419, 427. There are no such allegations or proofs in this record, and the question of the validity of this assignment as to subsequent creditors was not raised by anything that appears in it.

One who attacks an assignment on the ground that it is fraudulent as to creditors of the assignor existing at the time of its execution must allege and prove that there were such creditors at that time, for a conveyance cannot be fraudulent as to creditors unless there are creditors to be defrauded. Horbach v. Hill, supra; Clark v. Killian, supra; Braley v. Byrnes, 20 Minn. 435, 438,

(Gil. 389, 394;) Bruggerman v. Hoerr, 7 Minn. 337, 343, (Gil. 264, 269, 270;) Stone v. Myers, 9 Minn. 303, (Gil. 287.) In the determination of questions raised by such an attack, judgments against the assignor are no evidence against the assignee or other strangers of the previous existence of the indebtedness on which they are founded. Bruggerman v. Hoerr, 7 Minn. 337, 343, (Gil. 264, 269, 270;) County of Olmsted v. Barber, 31 Minn. 256, 261, 17 N. W. Rep. 473, 944; Hartman v. Weiland, 36 Minn. 223, 224, 30 N. W. Rep. 815; Bloom v. Moy, (Minn.) 45 N. W. Rep. 715. As there are no allegations or proofs of the existence of any unsecured creditors of the assignor prior to September 5, 1889, when the judgments were confessed, more than five months after the assignment was made, no question as to the fraudulent character of the assignment as to creditors was even raised by this record, and there was no error in the various rulings of the master and court sustaining its validity. The interveners therefore stood on no higher ground than the defendant. Their judgments rendered and executions issued against Burton after he had rebonded the property in this action gave them no rights to the property or its possession that Burton did not have when this action was commenced. They were therefore entitled to no relief. They stated no ground for any relief in their petition, and it should have been dismissed, and their motion to be made parties denied.

Turning now to the defendant, we have already seen that his answer did not raise the question of the fraudulent character of this assignment as to creditors. The plaintiff's demurrer to it was sustained, and the only remaining question regarding the title or possession of the property is, if the defendant had no creditors not secured by the assignment at the time of its execution, and at the time of the commencement of the action, was the assignment valid as to him, and did it entitle the plaintiff to the possession of the property under the allegations of his answer? His answer admitted the allegations of the complaint that on April 1, 1889, he made the assignment and delivered the property to the plaintiff, to secure the payment of the claims of the secured creditors; that he was employed as plaintiff's clerk thereafter, and that in that capacity he was in possession of the property, holding it for the plaintiff, when he repudiated the contract, on August 19, 1889, and claimed to hold the property for himself; that meanwhile $2,684.65 had been realized under the assignment, and paid over to these creditors, and that the balance of their debts remained unsecured. The answer alleged no failure on plaintiff's part to comply with any of the provisions of the assignment, and the only defense it attempted to set up was that after the drafting, and before the signing, of the instrument, the plaintiff made oral promises to him that he would furnish him with such goods, from time to time, as would be necessary to keep the stock up to its general average; that these goods should be paid for out of the proceeds of the sales, and that the business and stock should never be closed out, but should be continued as a going concern; that he was induced to sign the assignment by these oral promises; and that plaintiff had not performed them, but had proceeded according to the

terms of the written agreement. To this answer the plaintiff's demurrer was properly sustained. It stated no defense to this action, no right to the retention of this stock of goods, because the written agreement expressly provided that the property should be sold and completely closed out by January 1, 1890; and these contemporaneous oral agreements contradicted the terms of the written contract, and, in the absence of fraud or mistake, were not susceptible of proof. The conclusive presumption was that the contract contained the entire agreement of the parties on this subject, which was fully treated therein. Thompson v. Libby, 34 Minn. 374, 26 N. W. Rep. 1; Morrison v. Lovejoy, 6 Minn. 319, 351, (Gil. 224, 233;) Harrison v. Morrison, 39 Minn. 319, 40 N. W. Rep. 66; Underwood v. Simonds, 12 Metc. (Mass.) 275; Allen v. Furbish, 4 Gray, 504; Eighmie v. Taylor, 98 N. Y. 288. There was no plea of mistake here, and the only basis for avoiding the assignment on the ground of fraud attempted to be pleaded is that the defendant was induced to sign the contract by his reliance on the promises of the plaintiff to do certain acts in the future. It is well settled that the failure of either party to perform such promises is not such fraud as will authorize a rescission or repudiation of a conveyance when it does not appear that he who is in default is insolvent or unable to respond in damages for his breach.

Finally, it is assigned as error that the court, by its decree in question, entered a simple money judgment against the defendant for the value of the plaintiff's special interest in the property, when the decree should have been in the alternative for the recovery of the property or its value. Section 5181 of Mansfield's Digest of the Laws of Arkansas, which was in force in the Indian Territory, by the act of May 2, 1890, (26 St. at Large, p. 95,) when this judgment was entered, provides:

"In an action to recover the possession of personal property, judgment for the plaintiff may be for the delivery of the property, or for the value thereof, in case a delivery cannot be had, and damages for the detention."

It may be conceded that, where the defendant is in a position to return the property, the right to do so, and thereby to discharge his liability and that of his sureties for its value, is reserved to him by this statute, and that the judgment must in that case be in the alternative. The decisions of the supreme court of Arkansas construing this statute go no further than this. Hanf v. Ford, 37 Ark. 544; Rowark v. Lee, 14 Ark. 425; Jetton v. Smead, 29 Ark. 372, 383. But the record in this case discloses that, more than two years before this judgment was rendered, the replevied property had been sold at public auction by the marshal under executions against the defendant, and that from its proceeds he had received over $2,000 in money. He could not therefore have returned the property if the decree had so directed, and it would have been an idle ceremony to have ordered him to do so. It was perfectly competent for the court, under these circumstances, to enter a simple money judgment against him for the value of the special interest of the plaintiff in the property. Thus, in Boley v. Griswold, 20

Wall. 486, 487, Chief Justice Waite, delivering the opinion of the supreme court upon this question, under a statute in the same words, said:

"The court must be satisfied that the delivery cannot be made before it can adjudge absolutely the payment of money. But, if so satisfied, it may so adjudge. A special finding to that effect is not necessary. An absolute judgment for the money is equivalent to such a finding."

To the same effect is Brown v. Johnson, 45 Cal. 77.

The proceedings in this case were far from regular. This was an action at law, and there was no cause of action or defense pleaded in it that was not as good at law as in equity. It should have been tried at law, but its transfer to the chancery docket was on motion of the interveners, and all of the parties stipulated that it should be heard and tried by the master, and participated in the proceedings before him. By this action the irregularities we have not noticed in the earlier part of the opinion were waived.

The result is that, in an action for the recovery of personal property, where the only question at issue under the pleadings is the right to its possession, judgment cannot, in the absence of statutory authority, by lawfully rendered against sureties on the cross bond given by the defendant for the retention of the property, where no notice or statement of such a cause of action, or of any intention to urge it, is given before, and no evidence in support of it is produced at the trial. One may not plead and try one cause of action, and recover judgment upon another and totally different one. One who attacks an assignment on the ground that it is fraudulent as to creditors not secured by it must plead and prove either that there were unsecured creditors at the time of its execution, or that it was made with the intention of contracting debts to subsequent creditors, that the assignor did not intend to pay, or had no reasonable ground to believe he would be able to pay, and that such debts were thereafter contracted. As neither the interveners nor defendant pleaded or proved either of these grounds for avoiding the assignment here, the question of its validity as to creditors was not raised. It is no ground for the rescission or repudiation of a written contract that one of the parties to it has failed to perform an oral promise made at the same time with the execution of the written agreement that he would disregard some of its provisions. In a code action, where the statute provides that the judgment may be for the recovery of the possession of personal property or its value, a simple money judgment for the value of the property may be rendered against the defendant, where the court has found, or the evidence conclusively proves, that the property cannot be returned by the defendant. In such a case it is not necessary to render a judgment in the alternative.

The judgment against the defendant is affirmed, with costs. The judgment against the interveners is reversed, without costs, and remanded as to them, with instructions to dismiss their bill to be made parties, with costs.