HOWELL ET AL VS BROWN.

Opinion delivered October 19, 1904.

1. *Appeal—Actions at Law and Equity—Mistake in Procedure—Waiver.*

When parties have tried a case as an equitable proceeding, before a master in chancery, without objection, they cannot, in this court, object that the case was an action at law, and that an appeal, taken as from an equitable proceeding, be dismissed for failure to comply with requirements of appeals in law cases, under Sec. 4927 Mansf. Dig. (3132 Ind. Ter. Stat.) providing that errors in mode of procedure are waived by failure to object at the time.

2. *Account Allowed by Indian Probate Judge—Not a Judgment—Subject to Attack.*

An action against the executors based upon a statement of account of indebtedness of an estate, bearing an endorsement of approval by an Indian county judge, but failing to show any action in such court, names of parties, amount, and owner of judgment, etc., must be *Held*, to be an act; on upon an account and not upon a judgment, and hence is open to attack.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by Annie G. Brown, administratrix, against Sallie Howell and others. Judgment for plaintiff. Defendants appeal. Reversed.

The plaintiff began her action on the 4th day of March, 1899, by filing her substituted complaint in the United States Court for the Southern District of the Indian Territory, which reads as follows:

"The plaintiff alleges that she is a member of the Chickasaw and Choctaw Tribes of Indians, and a citizen of the United States, and that the defendants Sallie Howell and J. B. Hester are citizens of the United States, and not members of any Indian tribe or nation, and all of the defendants are residents of the Indian Territory, and that the defendant Sallie Howell is a resident of the Third Division of the Indian Territory.

"For cause of action, plaintiff alleges: That heretofore, to wit, on the ——— day of August, 1892, one Milton Brown, a citizen of the Chickasaw Nation, died intestate. That on the ——— day of ———, 1892, the plaintiff was duly appointed administratrix of the estate of said Milton Brown by the probate court of the Chickasaw Nation at Tishomingo, Indian Territory. That at the death of Milton Brown the estate of Joe H. Riley was indebted to the said Milton Brown in the sum of four thousand three hundred and twelve dollars and sixty-five cents. That during the month of May, 1892, the said J. H. Riley died, leaving a last will and testament, a copy of which is hereto attached and made a part hereof, marked 'Exhibit A.' That, according to the last will and testament, the defendant Sallie Howell (then Sallie Riley) and J. B. Hester were made executrix and executor of said

will. That by the terms of said will of the property was devised to the wife and daughter after the payment of all debts against said estate. That said Sallie Howell (then Sallie Riley) filed and probated said will with the county clerk of Pontotoc county, at Tishomingo, Indian Territory, and took possession of all the property belonging to said estate, by virtue of said will; they having probated same as executrix and executor thereof. That immediately after the probating of said will this plaintiff presented the account of herself, as administratrix of the estate of Milton G. Brown, to said executors, and demanded payment thereof, and the payment was refused. That said claim was filed with the judge of the probate court of Pontotoc county as a claim against the estate and executors of the said J. H. Riley, and notice of the fact that the same had been presented for approval was given to the said executor and executrix. Upon a full hearing of the various items of the same, said claim was duly and legally probated and allowed against the estate and the executor of the said J. H. Riley for the sum of $4,312. That the interest on said account to the present date, together with the original and principal, amounts to $7,500. That, as soon as the said defendants Sallie Howell and J. B. Hester qualified, they took posession of about seven hundred and sixty head of cattle, five-hundred head of horses, one hundred head of hogs, and various other personal property belonging to the deceased, J. H. Riley, including a note for two thousand dollars signed by J. A. Cobb, D. M. Hodges, and J. M. Bryant. That said executrix and executor have failed and refused to pay any debts of the intestate, J. H. Riley. That immediately after taking possession of said property they made fraudulent and collusive disposition thereof, to get the same out of the reach of the creditors of the estate of the said J. H. Riley. That there was ample enough of said property to pay all debts of said estate of J. H. Riley, and leave several thousand dollars to the beneficiaries named in said will. For said purpose said estate has been disposed of, and by collu-

sion they have permitted Si Dulaney to take possession of and hold one hundred head of said cattle, and William York one hundred head, W. A. McBride one hundred head, and Reuben Freeney about two hundred head. That, executrix and executor not being members of the Chickasaw Tribe of Indians, the Chickasaw courts were powerless to enforce the payment of the claims allowed against said estate.

"Plaintiff further alleges, as the Chickasaw courts have jurisdiction to administer upon said estate in favor of another Chickasaw Indian, that their hearing and decision of the amount of said claim is valid and binding upon the executrix and executor named in said will, and the defendants herein.

"Plaintiff alleges that said executrix and executor made no bond whatever upon taking charge of said property, and that the executrix, Sallie Howell, who has control of the larger part of said property, is wholly insolvent, and has no other property, except that she received by virtue of being executrix of the estate of said J. H. Riley. For said purpose said estate has been disposed of, and by collusion has permitted Si Dulaney to take possession of and hold one hundred head of said cattle, and William York one hundred head, and W. A. McBride one hundred head, and Reuben Freeney about two hundred head. That, the executrix and executor not being members of the Chickasaw Tribe of Indians, the Chickasaw court was powerless to enforce payment of the claim allowed against said estate.

"Wherefore plaintiff prays for judgment against the defendants Howell and Hester for the amount of said account and interest thereon, and asks that pending this action they be restrained from disposing or changing the marks or brands of any of the said property, or exercising any further control or ownership over the same, except as necessary for the protection of the

property, and that the defendants Freeney, McBride, York, and Dulaney be enjoined from disposing of any property that has heretofore belonged to the estate of the said J. H. Riley in any shape or form, and that they be allowed only such control over the same as may be necessary for the protection of said property."

Afterwards certain parties were, by leave of court, made parties defendant, and thereafter the plaintiff filed her supplemental complaint, which reads as follows:

"Now comes the plaintiff, Annie G. Brown, and by leave of the court files this, her supplemental complaint, and, in addition to the allegations made in the first amended complaint, alleges: That, at the time the said Sallie Howell (then Sallie Riley) qualified as executrix of Joe Riley, the estate of the said Joe Riley was the owner of a large number of cattle, to wit, about twelve hundred head of cattle, and that she, the said Sallie Howell, as such executrix, took possession of said cattle, and used the same as her own, and appropriated a large portion of the same to her own use and benefit. The exact number of cattle taken possession of by her, and so used and appropriated by her to her own use and benefit, are unknown to this plaintiff, and the facts in connection therewith are peculiarly within the knowledge of her, the said Sallie Howell. That afterwards, to wit, at various times, she delivered portions of said cattle to her husband, Charles Howell, and that the said Charles Howell at various times, with the knowledge and consent of the said Sallie Howell, sold and disposed of large portions of said cattle, and reinvested same in other cattle, and now has in his possession a large number of said cattle, and a large amount of money belonging to said estate, the proceeds of said cattle belonging to said estate. That the said Sallie Howell and the said Charles Howell at various times changed the brands on said cattle, and said cattle now

have on them entirely different brands, and are run in an entirely different brand, from those that were on said cattle at the time of the death of the said Joe Riley. That the said Sallie Howell has no other property, aside from said cattle or the money derived from the sale thereof; and, aside from the said cattle and the money derived from the sale of said cattle, she, the said Sallie Howell, and the said Charles Howell are wholly insolvent. That the said Charles Howell has little, if any, other property than that derived from said sale, and that he and his wife, the said Sallie Howell, have been and are now conniving together to prevent the collection of the judgment rendered in this cause, and have entered into a fraudulent conspiracy to prevent the collection of plaintiff's demands here.

"Wherefore plaintiff prays that said Charles Howell be made a party defendant herein, and that a receiver be appointed to take charge and possession of all the property held by the said Sallie Howell, and that the said Charles Howell and said Sallie Howell, and each of them, be enjoined and restrained from disposing of any of said property, and that on final hearing plaintiff have all relief to which she may be entitled by reason of the premises."

Thereafter Charles Howell filed his separate answer, which is as follows:

"Now comes Charles Howell, one of the defendants herein, and, for answer in this behalf, says that it is not true, as is alleged in plaintiff's complaint, that this defendant ever received from his wife, Sallie Howell, or from any other person, any cattle or property belonging to the estate of Joe Riley, deceased, and that it is not true that this defendant at any time ever sold or disposed of any cattle or other property belonging to the estate of the said Joe Riley, deceased, and that it is not true that this defendant

ever invested any money belonging to the estate or received from the estate of Joe Riley, deceased, in cattle or in any other property, and that it is not true, as is alleged in plaintiff's complaint, that this defendant now has in his possession any cattle or money or other property derived from the estate of said Joe Riley, deceased, and that it is not true, as is alleged in said complaint, that this defendant ever changed the brands on any cattle belonging to the estate of said Joe Riley, deceased, or upon any cattle purchased with money belonging to said estate.

"Further answering in this behalf, defendant says that the meaning and intent of the denial above expressed is that this defendant has never at any time received any personal benefits or handled as his own any of the property of the estate of the said Joe Riley, deceased, and that none of the cattle now in defendant's possession were obtained in the manner and form set forth in plaintiff's complaint.

"Defendant alleges the fact to be that all of the cattle which are now in his possession, and which he now owns, are his individual property, purchased with his own money; and defendant denies that he and the said Sallie Howell have ever entered into any fraudulent conspiracy, and that they are now conniving together to prevent the collection of plaintiff's alleged demands.

"And now, having fully answered herein, defendant prays that a receiver be not appointed in this case as prayed for, and that he be dismissed with his costs."

And thereafter the defendants filed a substituted answer, which is as follows:

"Come defendants here, for substituted answer to the substituted complaint heretofore, on the 4th day of March, 1899,

filed in this cause, say they have no information sufficient .to form a belief as to whether on the ———— day of ————, 1892, the plaintiff was duly appointed administratrix of the estate of Milton Brown, and therefore deny that such is the fact, and ask strict proof of the same.

"They deny that at the death of Milton Brown the estate of Joe H. Riley was indebted to the said Milton Brown in the sum of $4,312.65, or in any other sum. They deny that Sallie Howell (then Sallie Riley) filed and probated the will of J. H. Riley with the county clerk of Pontotoc county, at Tishomingo, Indian Territory, and took possession of all the property belonging to said Riley's estate, by virtue of his said will.

"They deny that plaintiff, as administratrix of Milton Brown, presented to them the account of herself, as such administratrix, against the estate of Joe H. Riley, and demanded payment of the same. They deny that said claim was duly and legally probated and allowed by the judge of the probate court of Pontotoc county as a claim against the estate of, and executrix of, the said J. H. Riley, for the sum of $4,312.65, or for any other sum. They deny that the interest on said account up to the date of filing suit herein, together with the principal, amounted to $7,500.

"They deny that they, or either of them, took possession of 750 head of cattle, 500 head of horses, 100 head of hogs, and a note for $2,000 signed by J. A. Cobb, D. M. Hodges, and J. M. Bryant, belonging to the deceased, Joe H. Riley, or his estate.

"They deny that they have failed and refused to pay any debt of the said Joe Riley, and deny that they, or either of them, made any fraudulent or collusive disposition of any property belonging to the estate of the said Joe H. Riley for the purpose of getting the same out of the reach of the creditors of the said

estate.    They deny that there was enough of said property to pay
all debts of said estate of Joe H. Riley, and deny that, for the
purpose of defeating the creditors of said estate, they, or either of
them, have disposed of the property, or that by collusion they
permitted Si Dulaney, William York, W. A. McBride, or Reuben
Freeney to take possession of any of the property of said estate,
nor have they permitted any other person so to take possession
of any of said property.

"Further answering, defendants say that the property left
by the said Joe H. Riley upon his decease was not more than
sufficient to pay his burial expenses and the expenses of his last
sickness; that the estate of said Riley is not indebted and has not
been indebted to this plaintiff or to Milton Brown in any sum
whatever; that, if the said claim of this plaintiff was filed with the
judge of the probate court of Pontotoc county, as set out in
plaintiff's complaint, and was allowed by said judge, the said
allowance was obtained by fraud and collusion, and that said
court had no jurisdiction over the persons of these defendants,
and no jurisdiction to make any order whatever against the estate
of said Joe H. Riley; and that said order, if the same was made, is
wholly null and void.

"Wherefore, having fully answered herein, defendants
pray that they may be discharged from this cause, with their
costs."

While the record does not disclose a direct reference to the
master in chancery, both parties appeared before one John
Hinkle, and gave testimony in person and by deposition; and
thereafter said John Hinkle filed a master's report, which reads
as follows:

"This case is presented to me on a substituted complaint
and answer.    The plaintiff alleges that she is a member of the

Chickasaw and Choctaw Tribes of Indians, and that the defend-
ants Sallie Howell and J. B. Hester are citizens of the United
States, and that Sallie Howell is a resident of the Third Division
of the Indian Territory. The plaintiff further alleges: That on
the ——— day of August, 1892, Milton Brown, a citizen of the
Chickasaw Nation, died intestate. That on the ——— day of
———, 1892, plaintiff was appointed administratrix of the estate
of Milton Brown by the probate court of the Chickasaw Nation.
That at the death of the said Milton Brown the estate of J. H.
Riley was indebted to the said Milton Brown in the sum of
$4,312.65. That during the month of May, 1892, the said J. H.
Riley died, leaving a last will and testament, a copy of which is
attached to and made a part hereof. That the said Sallie Howell
(then Sallie Riley) and J. B. Hester were appointed executors of
the said will. That by the terms of the said will all the property
was given to his wife and daughter, after the payment of all debts
against the said estate. That the said Sallie Howell (then Sallie
Riley) filed and probated said will with the county clerk of
Pontotoc county, at Tishomingo, Ind. Ter., and took possession
of all the property belonging to said estate, by virtue of said will.
That immediately after the probating of the said will this plain-
tiff presented the account of herself as administratrix of the estate
of Milton G. Brown to said executrix, and demanded payment
thereof, and the payment was refused. That the said claim was
filed with the judge of the probate court of Pontotoc county as a
claim against the estate and executors of the said J . H. Riley
and notice of the fact that the same had been presented for
approval was given to the said executrix and executor. Upon a
full hearing of the various items of the claim, the said claim was
duly and legally probated and allowed against the estate and
executors of the said Riley for the sum of $4,312.65. That the
interest on the said account to the present date, together with the
principal, amounted to $7,500. That, upon the executors qual-
ifying, they took possession of about 750 head of cattle, 500 head

of horses, 100 head of hogs, and various other personal property belonging to the deceased, J. H. Riley, including a note for $2,000, signed by J. A. Cobb, D. M. Hodges, and J. M. Bryant. That said executrix and executor have failed and refused to pay any debts of the intestate. That immediately after taking possession of said property they made fraudulent and collusive disposition thereof to get same out of the reach of the creditors of the estate of the said J. H. Riley. That there was amply enough of said property to pay all the debts of the said estate, and leave several thousand dollars to the beneficiaries named in said will. That said estate has been disposed of, and by collusion they have permitted Si Dulaney to take possession of and hold 100 head of cattle, and Wm. York to take possession and hold 100 head, and W. A. McBride 100 head of said cattle, and Reuben Freeney about 200 head of said cattle. That, the executors not being members of the Chickasaw Tribe of Indians, the Chickasaw courts were powerless to enforce the payment of the claim allowed against said estate. Plaintiff further alleges, as the Chickasaw courts have jurisdiction to administer upon said estate in favor of another Chickasaw Indian, that the hearing and decision of the court on said claim is valid and binding upon executrix and executor. Plaintiff prays for judgment against Sallie Howell and J. B. Hester for the amount of said account and interest, and that they be restrained from disposing or changing the marks of possession of any of said property, or exclusive control over said property, further than necessary for its protection, and that the defendants Freeney, McBride, York, and Dulaney be enjoined from disposing of any of the property belonging to the estate of the said J. H. Riley, and that they only be allowed such control over the same as may be necessary for the protection of said property. The said executors made no bond whatever upon taking charge of said property, and the said Sallie Howell, who has control of a large part of said property, is wholly insolvent, except the property that she received as said executor.

"The defendants Sallie Howell and J. B. Hester, as executors, presented their substituted answer, and deny that at the death of Milton Brown the estate of J. H. Riley was indebted to him in the sum of $4,312.65, or in any other sum, or that Sallie Howell (then Sallie Riley) filed and probated the will of J. H. Riley with the county clerk of Pontotoc county, at Tishomingo, and took possession of all the property of J. H. Riley's estate. They deny that plaintiff, as administratrix, ever presented to them the account of herself, as such administratrix, against the estate of J. H. Riley, deceased, and demanded payment of the same. They deny that the said claim was legally probated by the probate court of Pontotoc county as a claim against the estate of J. H. Riley and the executors of the said J. H. Riley for the sum of $4,312.65, or for any other sum. They deny that the interest to date of filing suit herein, together with the principal, amounted to $7,500. They deny that either of them took possession of seven hundred and fifty head of cattle, five hundred head of horses, and one hundred head of hogs, and a note to the amount of two thousand dollars signed by J. A. Cobb, D. M. Hodges, and J. M. Bryant, belonging to the deceased estate. They deny that they have failed to pay the debts of the deceased, or that they fraudulently and collusively disposed of any of said property belonging to the said estate for the purpose of placing it beyond the reach of the creditors of said estate. They deny that, for the purpose of defeating the creditors of said estate, they have disposed of, or collusively permitted Si Dulaney, Wm. York, and W. A. McBride, and Reuben Freeney, or any other person, to take possession of, the property of said estate. They say the estate of J. H. Riley is not indebted, nor has it been, to plaintiff or Milton Brown, in any sum whatever; that, if plaintiff's claim was filed with the probate judge of Pontotoc county and was allowed by the said judge, said allowance was obtained by fraud and collusion, and that said court had no jurisdiction of the person of the defendants, and no jurisdiction to make any orders

against the estate of J. H. Riley; and that the same is wholly void. They pray to be dismissed with their costs.

"A copy of the will of J. H. Riley, deceased, was introduced as evidence. It appears from the certificate and seal attached to said will by the clerk of the county court of Pontotoc county, Indian Territory, that the said will was entered and recorded in said court on the 17th day of January, 1892.

"It is agreed by the parties to this suit that Annie G. Brown was at the institution of this suit the duly qualified and acting administratrix of Milton Brown, deceased, and that the defendants Sallie Howell and J. B. Hester were the qualified executors of the estate of J. H. Riley, deceased; that at the time of the institution of this suit the said Sallie Howell and J. B. Hester, as executors of said estate, had in their possession sufficient property belonging to the estate of the said J. H. Riley to pay off and satisfy the claim of the plaintiff herein, if it was found to be a valid and subsisting claim against the said estate; that the plaintiff, Annie G. Brown, is a member of the Choctaw and Chickasaw Tribes of Indians, and that the defendant J. B. Hester was a citizen of the United States, and that the defendant Sallie Howell was a member of the Choctaw Tribe of Indians by intermarriage; that her husband, J. H. Riley, was a Choctaw Indian by blood.

"The plaintiff bases her action upon an account approved and allowed by the county and probate judge of Pontotoc county, Indian Territory, in the sum of $4,312.65, principal, and enough interest to make the total of $7,500. It appears that the said account was recorded by the clerk of said county. The plaintiff claims that, the said Indian court being a court of general jurisdiction, jurisdiction cannot be impeached collaterally; that the court had jurisdiction over the subject-matter, and its judgment

is conclusive. The defendants deny every allegation of the plaintiff's complaint, but, upon an agreement entered into, they abandon a great many of their denials. The contention of the defendants, as I understand it, is that they are not now indebted to the plaintiffs, and was not at the time of probating said claim indebted to them, in any sum whatever, and that the allowance of plaintiff's claim was obtained by fraud and collusion; that said court had no jurisdiction to make any order against the estate of J. H. Riley, and the said order is void.

"There is no evidence to support the allegation of fraud in obtaining the allowance of plaintiff's claim, unless it can be said it was fraud to obtain the allowance without notice to the executors of said estate; and it is not clearly shown that J. B. Hester, one of the executors, did not have notice. Susan Riley, one of the executors, says in her deposition that she did not have notice, and that her co-executor, J. B. Hester, was a nonresident, but does not say that he did not have notice or that he was a nonresident at the time of the probating the claim. It is denied that the judge signed the order allowing the said claim, but it is clear to my own mind, from a comparison of the judge's signature to the deposition with his signature to said order of allowance, that he did sign said order of judgment. The defendants' testimony shows that many of the items charged in plaintiff's complaint were incorrect, and not due from the deceased at the time of his death; but they do not show that any part of said claim or judgment has been paid since it was allowed by the court. The allegations of fraud being made by the defendants, the burden of proving the same is upon them, which they failed to do to the satisfaction of my mind. I am of the opinion that the plaintiff must stand or fall with the judgment of the Indian court. If they had the jurisdiction to enter the judgment, defendants cannot go behind it; but, if they did not, the defendants may go behind it to disprove plaintiff's account. In my opinion, it had jurisdiction

over the subject-matter of the estate pending in the court; but is it necessary, before they can legally allow claims, to first serve the executors or administrators with notice of the presentation of said claims, and, if so, did the defendants have that notice? The Indian law does not require notice to the executor or administrator upon the presentation of claims for allowance. Section 2 requires them to give notice by publication, requiring all persons having claims or demands against such estate to present them in open court, duly verified, under oath, within twelve months after the date of advertisement. Section 1 requires them to pay the just debts of said estate out of any money or property coming to their possession.

"I therefore conclude that, the Indian court having passed upon the validity of this claim, the presumption is that it had jurisdiction and complied with the law, and its judgment became final, unless reversed upon appeal; that the judgment of the Indian court in approving and allowing the claim of plaintiff cannot be impeached in this action; and that the action of plaintiff herein be sustained."

And thereafter exceptions were filed to said master's report, which were overruled by the court. Appellants' specifications of error include points relied on.

On the 9th day of January, 1901, the court rendered the following judgment in the cause, to wit:

"On this, the 9th day of January, 1901, came on to be heard the exceptions of defendants to the report of the master in chancery filed herein on the 27th day of May, 1899, and, after hearing said exceptions and duly considering said report, the court is of the opinion that the same should be overruled, and that judgment should be rendered in favor of the plaintiff in

accordance with the findings of the master in chancery herein. It having been made to appear to the court that the defendant J. B. Hester since the institution of this suit has departed this life, and that Mrs. J. B. Hester is now the sole executrix of the estate of her deceased husband, J. B. Hester, the original defendant herein, and that said Mrs. J. B. Hester has been made party to this suit, and has in her hands and possession part of the money held by J. B. Hester as one of the executors of the estate of Joe Riley, deceased, it is therefore hereby ordered, adjudged, and decreed by the court that the plaintiff, Annie G. Brown, as administratrix of the estate of Milton Brown, deceased, do have and recover of and from Sallie Howell, as executrix of the estate of Joe Riley, the sum of $6,468.97, with interest at the rate of six per cent. per annum from the date hereof until paid, and all costs of this suit, for all of which let execution issue.

"It further appearing to the court that Mrs. J. B. Hester, executrix of the estate of J. B. Hester, one of the original defendants herein, has now in her hands and possession the sum of $3,689.50 of money belonging to the estate of Joe Riley, and which was secured by the said J. B. Hester as executor of the said Joe Riley, it is hereby ordered, adjudged, and decreed that said Annie G. Brown, as administratrix of the estate of Milton Brown, deceased, do have and recover of and from the said Mrs. J. B. Hester the said sum of $3,689.50, with interest at the rate of six per cent. per annum from date hereof; and said Mrs. J. B. Hester is hereby ordered and directed to pay forthwith said sum of $3,689.50 into court, to be credited upon this judgment; and when said sum of $3,689.50, or any part thereof, shall be paid as herein directed, this judgment and decree, as against the said Sallie Howell as executrix of the estate of Joe Riley, deceased, shall be credited herewith. To all of which the defendants at the time excepted, and still except."

Appeal was taken from the judgment of the court below to this court on the record.

*Stuart & Gordon, J. G. Ralls,* and *A. C. Cruce,* for appellants.

*Ledbetter & Bledsoe,* for appellee.

GILL, J.    An examination of the complaint and supplemental complaint in this action shows it not to be an action upon a foreign judgment, but to be an action upon an account.   Clearly, it is a legal action, and has in its main features no elements whatever of an equity action; nor does the judgment of the court below in any wise show that the equity features of the complaint were at any time ever passed upon or decided by the court below. The pleadings, however, do show that the complaint asks of the court below equitable relief, by way of injunction and the appointment of a receiver.   While the record does not disclose that the case was by order ever submitted to the master in chancery, or a special master in chancery, by the court below, it does disclose that both parties appeared and gave their testimony before one John Hinkle, who thereafter filed his report as special master in chancery in the cause, submitting various findings of fact and conclusions of the law to the court, and that the court passed upon these findings and conclusions of law and rendered its judgment thereon after formal exceptions had been filed and argued to such report.

We have heretofore held, in the case of Swinney vs Kelley, 5 Ind. Ter. Rep. 12 (76 S. W. 303), that where parties object to a reference to the master in chancery of a legal cause, and demand a jury trial, it is error in the court to overrule such objections and refuse such jury trial.   But in this case we are confronted with an entirely different proposition.   Here the parties, for convenience or otherwise, appeared before a special master in chancery and gave their testimony without objection and without exception to the submission of the cause in that form.

Without exception or objection, the appellees in the trial of the cause below have allowed judgment in said cause to be taken upon the master's report of the cause to the court in their favor, and received the benefits thereof, if any, and for the first time, in this court, they interpose the objection that it was an action at law, and that, inasmuch as the appellants have filed no motion for a new trial, they cannot be heard by reason thereof in this court; and we are asked to say that such cause is not properly before this court, because the action in the court below was an action at law, and no motion for a new trial has been filed. We do not think that such claim should prevail. In other words, in reviewing causes on appeal to this court, we are of opinion, and so decide, that, when parties have tried a cause in the lower court upon certain theories and procedure without objection, they cannot come into this court, and for the first time raise objections which could have been successfully interposed in the court below, on the ground that the procedure was wrong and their opponents failed to object thereto, especially when they themselves receive the fruits of such procedure. There is no doubt that, if appellees had objected to reference of this cause to a master and had demanded a jury trial of the lower court, such objection and demand would have been heeded and acceded to.

We sit here to pass upon the same questions that were submitted to the lower court, and those only, except questions of jurisdiction, and perhaps some others going to the foundation of the action. To say that a plaintiff may found his judgment upon the report of a master in chancery after having voluntarily tried his action as an equitable action, and then to hold, because the defendants acceded to such voluntary wish upon his part, and tried the case in the same manner without objection, that defendant should not be allowed to appeal the cause after the manner of procedure whereby the cause was tried, would be to allow the plaintiff to take advantage of his own wrong, and contrary to

all rules of equity and right doing. We must therefore hold that this court, under the peculiar circumstances of this case, is invested with full power to review and test all the actions and doings of the lower court in the trial of this cause.

Mansf. Dig. § 4927 (Ind. Ter. St. 1899, § 3132), provides in reference to an error in the adoption of the kind of proceedings, whether equitable or legal, as follows: "Sec. 4927. Such error is waived by failure to move for its correction at the time and in manner prescribed in this chapter, and all errors in the decisions of the court on any of the motions named in this chapter are waived unless excepted to at the time, which may be done by the clerks noting at the end of such decision words of the following import: 'To which decision the plaintiff (or defendant) excepts.'" In this case there was no attempt on the part of either party to correct any supposed error with reference to the trial in this case as an equity case, and such error must be held to have been waived; and in support of this position we cite Burton vs Platter, which was a replevin case, and transferred to the equity docket by agreement of all parties, decided by the Circuit Court of Appeals of the Fourth Circuit, and reported in 53 Fed. 901, 4 C. C. A. 95, in which the court uses the following language: "Where an action at law in the Indian Territory, wherein there is no cause of action or defense pleaded that is not as good at law as in equity, and which should be tried at law, is transferred to the chancery docket, and heard and tried by the master, all the parties agreeing thereto and participating in the proceedings, all irregularities of procedure are waived." See, also, Sparks vs Childers, 2 Ind. Ter. Rep. 187, (47 S. W. 316).

Such being our view, we will proceed to consider the specifications of error assigned by appellants:

Appellant, in his first specification of error, says: "The court erred in holding that the paper set out on pages 69 and 70

of the transcript was a judgment, and could not be attacked; the
same not being a judgment under the Chickasaw law, or any other
law known to the civilized world." The paper referred to and
complained of is an account consisting of various items, and
amounting to several thousand dollars, headed, "Account made
by Joe. H. Riley, October 13th, 1885." The several items in the
account are not dated. The account does not state to whom it
is due and payable. The account seems, in its several items, to
be against sundry persons. All there is to it is as follows:

"Account made by Joe H. Riley, Oct. 13, 1885.

| | | |
|---|--:|--:|
| My son Hamer made 19,800 rails at $1.00 per hundred..$ | 198 | 00 |
| And hauling the same, 50 cents per hundred | 99 | 00 |
| Charlie Anderson, building rock chimney at Gibson Grayson's old place | 22 | 00 |
| Solomon Harnatubbi made 2,525 at $1.00 per hundred | 25 | 00 |
| Cash | 60 | 00 |
| Lyman Frazier and Martin Ishtiaho-cha making rails | 56 | 00 |
| Cash borrowed (at the time his baby died) | 50 | 00 |
| Five year old steer at $25.00 (half was mine) | 12 | 50 |
| Harvey Nail (for work) | 16 | 70 |
| Pat Littlepage worked five months at $50.00 | 250 | 00 |
| Chandler (for work) | 150 | 00 |
| Dick McCuen (for making rails at Gibson Grayson's old place) and wanted a certain dun horse Piney | 75 | 00 |
| J. H. Riley and wife (for board 17 months at $10.00 each) | 340 | 00 |
| Lucy Davis (for board 7 months at $10.00) | 70 | 00 |
| Wallace Williams (for board 7 months at $10.00) | 70 | 00 |
| Davis (for board 1 month at $10) | 10 | 00 |
| Littlepage (for board 5 months at $10) | 50 | 00 |
| Chandler (for board 10 months at $10) | 100 | 00 |
| Solomon Harnatubbi (for board 2 months at $10.00) | 20 | 00 |

Milton Brown, attending J. H. Riley's cattle, horses,

| | | |
|---|---|---|
| and hogs, for 15 years at $150.00 | 2,250 | 00 |
| Rent Wire Pasture (24 months at $10.00) | 240 | 00 |
| One mattress | 6 | 00 |
| Breeding Mrs. Brown's six mares to his horse at $10 | 60 | 00 |

I paid in full before his mother died, and after her death J. R. Riley took the mares and colts, and promised to pay it, but never has. Rent farm, and hired Wallace Williams to make crop, and got behind with his crop, and told me to hire hands and put them with his man, and that I would be entitled to half of the crop, and I hired seven persons, viz., Solomon Harnatubbi, Easter, Eliza Ann, Willis Brown, Janey Brown, Old Lady Yarhonartecha and Maria, paid them........ 22 00 and never has paid me yet.

| | | |
|---|---|---|
| Will Gattis (for board 2 months at $10.00) | 20 | 00 |
| Mrs. Farris (board 2 months at $10.00) | 20 | 00 |

"Stonewall, I. T., May 12th, 1892. Mr. Milton Brown: Sir: Enclosed find your account against Joe H. Riley, which I have recorded, and return to you with county seal affixed. Clerk's fee $5.00. Send to Stonewall by registered letter, and oblige yours respectfully, B. S. Perry, Clerk. A. G. Brown.

"Sworn to and subscribed to before me this the 17th day of September, 1894. Billy Perry, C. & P. Judge P. Co., C. N."

Indorsed as follows: "No. 1,543. Within account approved. Billy Perry, County Judge of Pontotoc Co., C. N. Brown vs Howell. Recorded May 12th, 1892. B. F. Perry, Clerk."

The appellants, for their second assignment of error, say: "The court erred in admitting such paper in evidence as the judg-

ment of the probate court of the Chickasaw Nation, because said judgment was not authenticated or approved in the manner required by the Revised Statutes of the United States." We will consider these two specifications of error together. If the foregoing may be taken to be a judgment of the county judge of Pontotoc county, Chickasaw Nation, the same must come into this court, if sued upon, in the same manner and subject to the same legal tests as though it were a foreign judgment. But is this sued upon in this case as a foreign judgment? An examination of the complaint in the action shows that the same alleges: That immediately after the probating of the will of Joe H. Riley, in said Pontotoc county, "This plaintiff presented the account of herself, as administratrix of the estate of Milton G. Brown, to said executors, and demanded payment thereof, and the payment was refused. That said claim was filed with the judge of the probate court of Pontotoc county as a claim against the estate and executors of the said J. H. Riley, and notice of the fact that the same had been presented for approval was given to the said executor and executrix. Upon a full hearing of the various items of the same, said claim was duly and legally probated and allowed against the estate and the executors of the said J. H. Riley for the sum of $4,312.65. That the interest on said account to the present date, together with the original and principal, amounted to $7,500." Plaintiff further alleges, as the Chickasaw courts have jurisdiction to administer upon said estate in favor of another Chickasaw Indian, that their hearing and decision of the amount of said claim is valid and binding upon the executrix and executor named in said will and the defendants herein. This is all the reference there is made in the complaint to the so-called judgment reported in the case by the special master in chancery in his report to the court, which report upon that point is as follows: "The plaintiff bases her action upon an account approved and allowed by the county and probate judge of Pontotoc county, Ind. Ter., in the sum of $4,312.65, principal, and

enough interest to make the total $7,500. It appears that said account was recorded by the clerk of said county. * * * I am of the opinion that the plaintiff must stand or fall with the judgment of the Indian court. If they had the jurisdiction to enter the judgment, defendants cannot go behind it, but, if they did not, the defendants may go behind it to disprove plaintiff's account. * * * In my opinion, it had jurisdiction over the subject-matter of the estate pending in the court. But is it necessary, before they can legally allow claims, to first serve the executors or administrators with notice of the presentation of said claims, and, if so, did the defendant have that notice? The Indian law does not require notice to the executor or administrator upon the presentation of claims for allowance. * * * I therefore conclude that, the Indian court having passed upon the validity of this claim, the presumption is that it had jurisdiction and complied with the law, and its judgment became final, unless reversed upon appeal; that the judgment of the Indian court in approving and allowing the claim of plaintiff cannot be impeached in this action; and that the action of plaintiff herein be sustained." Thereafter, upon this report coming before the trial court, said court entered judgment thereon as heretofore quoted in full, overruling the exceptions to the report of the master, "and that judgment should be rendered in favor of the plaintiff in accordance with the findings of the master in chancery." Can this be taken to be a suit at all upon a foreign judgment? The prayer asks for judgment upon an account, and not upon a judgment. The complaint does not even charge that there was a judgment in any Chickasaw court. The utmost that can be said of the allegations of the complaint upon the subject of a judgment is that the Chickasaw court has jurisdiction to administer upon the estate mentioned in favor of another Chickasaw citizen, and that the hearing and decision of said court upon the amount of the claim in controversy is valid and binding upon the defendants

Mansf. Dig. § 5163 (Ind. Ter. St. 1899, § 3368), provides as follows: "A judgment is the final determination of the rights of the parties in an action." What action, if any, is mentioned in the so-called judgment? Who were the parties? What amount, if any, was found due and owing? To whom and by whom, if any person, was the owner of such so-called judgment? These questions must go as unanswerable. The paper in evidence, as a judgment, lacks every element of certainty as to parties and other elements of a judgment, and cannot be taken in any sense as a judgment.

The judgment of the court below, having been founded and based upon the findings and conclusions in the report of the special master in chancery, and findings and recommendations of said master being that there was a judgment of the Chickasaw court, and that such judgment could not be impeached in the present action, conclusively shows that the findings and conclusions of the master in the case were misconceptions of the case, and such conclusions cannot stand, nor can the action of the lower court in approving the master's report be upheld. The approval of the master's report was error, and the judgment founded thereon was, in like manner, erroneous, and, such judgment having been entered up on a misconception of the nature of the cause, it cannot be sustained; and the case is ordered reversed, and the cause remanded, with directions to the lower court to allow the defendants in this action (appellants) to interpose such defenses as they may have to the plaintiff's (appellee's) account. Inasmuch as the case is ordered reversed, it is unnecessary to consider the other specifications of error.

Cause reversed and remanded, with directions to the court below to grant leave to each party to amend the pleadings, if desired.

RAYMOND, C. J., and CLAYTON, J., concur.